## McCORMICK *v.* MARKET BANK.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 554. Submitted December 7, 1896. — Decided March 1, 1897.

In an action against a national bank upon a contract, each party relied on section 5136 of the Revised Statutes, by which a national bank, upon filing its articles of association and organization certificate with the Comptroller of the Currency, becomes a corporation, with power "to make contracts" and other corporate powers, but is prohibited to "transact any business, except such as is incidental and necessarily preliminary to its organization, until it has been authorized, by the Comptroller of the Currency to commence the business of banking." The defendant relied on the prohibition. The plaintiff relied on the exception to the prohibition, and also contended that, under the general power to make contracts, the contract sued on was valid as between the parties, even if contrary to the prohibition. *Held,* that a judgment for the defendant in the highest court of the State might be reviewed by this court on writ of error. By section 5136 of the Revised Statutes, a contract of lease, at a large rent. of an office to be occupied "as a banking office, and for no other purpose," for the term of five years, determinable at the end of any year by either party, executed by a national bank as lessee, after having duly filed its articles of association and organization certificate with the Comptroller of the Currency, but not having been authorized by him to com-

mence the business of banking, is void, cannot be made good by estoppel, and will not support an action against the bank to recover anything beyond the value of what it has actually received and enjoyed.

THIS was an action brought July 17, 1895, by McCormick against the Market National Bank of Chicago, Illinois, in the superior court of Cook county in the State of Illinois, and was submitted by the parties, waiving a trial by jury, to that court, upon an agreed statement of facts, in substance as follows:

On January 31, 1893, articles of association were signed, and an organization certificate was signed and acknowledged, by nine citizens of Illinois, before a notary public, and both were transmitted to the Comptroller of the Currency, as required by Title 62 of the Revised Statutes of the United States (the material parts of which are copied in the margin [1]), for the purpose of making them a national banking association at Chicago by the aforesaid name; and were on

---

[1] SEC. 5133. Associations for carrying on the business of banking under this Title may be formed by any number of natural persons, not less in any case than five. They shall enter into articles of association, which shall specify in general terms the object for which the association is formed. These articles shall be signed by the persons uniting to form the association, and a copy of them shall be forwarded to the Comptroller of the Currency, to be filed and preserved in his office.

SEC. 5134. The persons uniting to form such an-association shall, under their hands, make an organization certificate, which shall specifically state:

First. The name assumed by such association.

Second. The place where its operations of discount and deposit are to be carried on.

Third. The amount of capital stock and the number of shares into which the same is to be divided.

Fourth. The names and places of residence of the shareholders, and the number of shares held by each of them.

Fifth. The fact that the certificate is made to enable such persons to avail themselves of the advantages of this Title.

SEC. 5135. The organization certificate shall be acknowledged before a judge of some court of record, or notary public, and shall be, together with the acknowledgment thereof, authenticated by the seal of such court or notary, transmitted to the Comptroller of the Currency, who shall record and carefully preserve the same in his office.

SEC. 5136. Upon duly making and filing articles of association and an organization certificate, the association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such,

February 3, 1893, recorded, and afterwards carefully preserved, in the Comptroller's office.

On January 31, 1893, at a meeting of the directors of the bank, chosen by the stockholders, and named in the articles of association, a president and a cashier were duly elected; and the directors caused a seal to be made for the bank. On February 9, 1893, the president, pursuant to a resolution of the directors, signed and sealed with the corporate seal a lease in writing from the plaintiff to the bank of certain offices in Chicago, " to be used and occupied by said Market National Bank as a banking office, and for no other purpose," for the term of five years from May 1, 1893, at a yearly rent of $13,000, payable in equal monthly instalments. By an agreement made part of the lease, the plaintiff was to make certain alterations

and in the name designated in the organization certificate, it shall have power:

First. To adopt and use a corporate seal.

Second. To have succession for the period of twenty years from its organization, unless sooner dissolved or its franchise becomes forfeited.

Third. To make contracts.

Fourth. To sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons.

Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice-president, cashier and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.

Sixth. To prescribe, by its board of directors, by-laws not inconsistent with law.

Seventh. To exercise, by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on their business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debts; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes, according to the provisions of this Title.

But no such association shall transact any business, except such as is incidental and necessarily preliminary to its organization, until it has been authorized by the Comptroller of the Currency to commence the business of banking.

Sec. 5168. Whenever a certificate is transmitted to the Comptroller of the Currency as provided in this Title, and the association transmitting the same notifies the Comptroller that at least fifty per centum of its capital stock has been duly paid in, and that such association has complied with

and repairs at his own expense; either party might cancel the lease on May 1 of any year by giving ninety days' notice in writing; and no rent was to be charged until the bank took possession. On April 12, 1893, the parties made a supplemental agreement, by which the plaintiff was to make further alterations, the bank paying half the cost thereof. All the alterations and repairs were made by the plaintiff as agreed; the cost, paid by him, of the alterations made under the agreement of April 12, 1893, being $2475.

Upon the completion of the alterations, on June 22, 1893, the president and cashier, in the name of the bank, took possession of the demised premises, and put in the fixtures and furniture, blank books and stationery, necessary to carry on a banking business, and they were not removed until April 30, 1895.

all the provisions of this Title required to be complied with before an association shall be authorized to commence the business of banking, the Comptroller shall examine into the condition of such association, ascertain especially the amount of money paid in on account of its capital, the name and place of residence of each of its directors, and the amount of capital stock of which each is the owner in good faith, and generally whether such association has complied with all the provisions of this title required to entitle it to engage in the business of banking; and shall cause to be made and attested by the oaths of a majority of the directors, and by the president or cashier of the association, a statement of all the facts necessary to enable the Comptroller to determine whether the association is lawfully entitled to commence the business of banking.

SEC. 5169. If, upon a careful examination of the facts so reported, and of any other facts which may come to the knowledge of the Comptroller, whether by means of a special commission appointed by him for the purpose of inquiring into the condition of such association, or otherwise, it appears that such association is lawfully entitled to commence the business of banking, the Comptroller shall give to such association a certificate, under his hand and official seal, that such association has complied with all the provisions required to be complied with before commencing the business of banking, and that such association is authorized to commence such business.

SEC. 5170. The association shall cause the certificate issued under the preceding section to be published, in some newspaper printed in the city or county where the association is located, for at least sixty days next after the issuing thereof.

SEC. 5190. The usual business of each national banking association shall be transacted at an office or banking house located in the place specified in its organization certificate.

Of the whole capital stock of $1,000,000, provided for in the articles of association, no more than the sum of $331,594 was ever paid in. And the bank was never authorized by the Comptroller of the Currency to commence, and never did commence, the business of banking.

The officers of the bank, from time to time, corresponded with the plaintiff, using letter heads with the name, location and place of business of the bank and the names of its officers printed thereon, and signing in their official capacity.

The plaintiff, at the times of the negotiations for the lease, and of its execution, and of the taking possession of the demised premises by the officers of the bank, understood and believed that it was legally organized as a national bank, and as such was ready to do banking business, and had the power to enter into the lease and agreements aforesaid; and had no knowledge or information to the contrary until August 15, 1893, when the officers of the bank informed him that the bank had never been authorized by the Comptroller of the Currency to commence the business of banking, and had no power to enter into the lease, and had abandoned all further proceedings for carrying on the banking business, and offered to surrender the lease, but he refused to accept the surrender. On September 20, 1893, the president of the bank caused the key of the office to be left on the desk of the plaintiff's agent, he refusing to accept it.

On July 15, 1893, the nine persons, who had signed the aforesaid articles of association and organization certificate, signed and transmitted to the Comptroller of the Currency a certificate revoking them; and he placed it on file in his office. On the same day, five of those persons and seven others signed and acknowledged, and forwarded to the Comptroller, other articles of association and organization certificate, for the purpose of making them a national bank by the same name, with a capital of $500,000; and they were forthwith recorded in the Comptroller's office. On July 25, 1893, the persons signing the latter articles of association and organization certificate abandoned all further proceedings with regard to the organization of the bank as therein

provided, and with regard to its commencing the business of banking.

On October 4, 1893, the parties agreed in writing that, without prejudice to the rights of either, the plaintiff should take possession of the premises, and endeavor to lease them and to collect the rent thereof. The plaintiff made every effort to obtain a tenant accordingly, but was unable to do so.

On January 3, 1895, the plaintiff gave written notice to the president of the bank of his intention to terminate the lease on May 1, 1895, in accordance with its terms.

The cashier paid the rent, according to the lease, until July 22, 1893. But the bank refused to pay any rent subsequently accruing; and never paid its half of the cost of the alterations made under the agreement of April 12, 1893.

If, upon the facts stated, without regard to the form of the pleadings, the court should be of opinion that the plaintiff was entitled to recover, judgment was to be rendered for him for such sum as he was entitled to, with costs; otherwise, judgment for the defendant, with costs.

The plaintiff asked the court to find, as matter of law, the following propositions:

"1st. That the execution of the lease in question by the defendant was incidental and necessarily preliminary to its organization, and to its entering upon a banking business.

"2d. That the execution of the lease in question was a proper exercise of the powers possessed by such defendant to make contracts under paragraph 3 of section 5136 of the Revised Statutes of the United States.

"3d. That the limitation or last clause of paragraph 7 of said section does not apply to the powers conferred by paragraphs 1 to 6 in said section; that the Market National Bank of Chicago had the power to enter into said lease, and to legally bind itself thereby.

"4th. That there was no want of power on the part of said defendant to execute said lease, but merely a defective organization, and said bank cannot plead such defective organization to defeat a recovery.

"5th. That said contract of lease has been fully executed.

"6th. That the said plaintiff was not bound to ascertain whether or not the said defendant was properly and legally organized; and that, if the plaintiff relied upon the representations and statements of the proper officers of said defendant that the bank was properly and legally organized and empowered to make and enter into said lease, he is entitled to recover the stipulated rental named therein, and the defendant is estopped to deny its liability.

"7th. That the said defendant, by its acts, conduct and declarations, as shown by the agreed statement of facts in this case, is estopped from alleging that it was not fully organized as a banking corporation under the laws of the United States, and from alleging that it did not have the power to execute the lease in question.

"8th. That the plaintiff, under the facts of this case as agreed upon, is entitled to recover judgment, at the rate agreed upon in said lease, from July 22, 1893, up to May 1, 1895, and also to recover one half of the expenses of repairing and changing the said premises, according to the stipulation, with interest upon each instalment as it became due, at the rate of five per cent per annum."

The court refused to find the foregoing propositions of law, or any of them; and the plaintiff duly excepted to the refusal.

The court found for the plaintiff, and gave judgment in his favor for the rent from July 22 to August 15, 1893, and for half the cost of the alterations made by the plaintiff under the agreement of April 12, 1893, with interest, amounting in all to the sum of $2548.85.

The judgment was affirmed, on successive appeals of the plaintiff, by the Appellate Court and by the Supreme Court of Illinois. 61 Illinois App. 33; 162 Illinois, 100. The plaintiff thereupon sued out this writ of error. The assignments of error upon each appeal, as well as upon the writ of error, were based upon the propositions of law above stated.

*Mr. A. M. Pence* for plaintiff in error.

*Mr. Hiram T. Gilbert* for defendant in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By the National Bank Act, a national banking association, "upon duly making and filing articles of association, and an organization certificate," with the Comptroller of the Currency, "shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, shall have power," "to adopt and use a corporate seal," "to have succession for the period of twenty years from its organization," "to make contracts," "to sue and be sued, as fully as natural persons," to elect and dismiss officers, to make by laws, and to exercise "all such incidental powers as shall be necessary to carry on the business of banking." "But no such association shall transact any business, except such as is incidental and necessarily preliminary to its organization, until it has been authorized by the Comptroller of the Currency to commence the business of banking." Rev. Stat. § 5136.

The question upon which this case turned was whether a national banking association which, after having duly made and filed its articles of association and organization certificate with the Comptroller of the Currency, but not having received from him a certificate authorizing it to do banking business, enters with the owner of real estate into a contract of lease, for a term of five years, determinable at the end of any year by either party, of an office to be occupied by the association as a banking office, is bound by the lease, according to its provisions.

This action was brought by the lessor in such a lease against the defendant as lessee. The first question that presents itself upon the record is whether this court has jurisdiction of this writ of error.

The defendant contended, and the highest court of the State of Illinois adjudged, that the contract of lease sued on was not incidental and necessarily preliminary to the organization of the corporation; and therefore, by virtue of the last clause of section 5136 of the National Bank Act, above cited,

having been executed by the defendant before being author-
ized by the Comptroller of the Currency to commence the
business of banking, did not bind the defendant.

If the decision had been the other way, it would, as
admitted at the bar, have been a decision against an immu-
nity set up and claimed by the defendant under a statute
of the United States, and therefore reviewable by this court
on writ of error. *Swope* v. *Leffingwell*, 105 U. S. 3; *Logan
County Bank* v. *Townsend*, 139 U. S. 67; *Metropolitan Bank*
v. *Claggett*, 141 U. S. 520; *Chemical Bank* v. *Hartford Deposit
Co.*, 161 U. S. 1.

It does not, however, follow that the plaintiff is not entitled
to a review by this court of the judgment, so far as it was
against him.

The plaintiff, in the courts of the State, and by his assign-
ment of errors filed with the writ of error sued out from this
court, specially set up and claimed a right to recover, so far
as concerned the construction of that section of the statute,
upon two grounds.

His first ground was that the execution of the lease by the
defendant was "incidental and necessarily preliminary to its
organization," and therefore within the exception of the last
clause of the section in question. As to that ground, the case
stands thus: The defendant relied on the prohibition to trans-
act any business until it had been authorized by the Comp-
troller of the Currency to commence the business of banking.
The plaintiff relied on the exception out of that prohibition.
The decision against the plaintiff, therefore, was a decision
against a right claimed by him under a statute of the United
States.

The case, in this particular, is analogous to those arising
under the provision of the Bankrupt Act, that a bankrupt
who had in all things conformed to his duty under the act
should receive a discharge from all his debts, with certain
exceptions, among which were debts created by his fraud or
embezzlement, or by his defalcation as a public officer, or while
acting in a fiduciary character. Rev. Stat. §§ 5114, 5117. In
*Strader* v. *Baldwin*, 9 How. 261, indeed, under the like pro-

vision of a former bankrupt act, where a bankrupt, being sued upon a debt, pleaded his discharge, and the plaintiff replied that the debt was contracted while acting in a fiduciary capacity, and the decision of the state court was in favor of the defendant, this court held that it had no jurisdiction, because the decision below was in favor of the right set up by the defendant. But the court there failed to notice that the decision, while in favor of the right or immunity, set up by the defendant, of a discharge under the Bankrupt Act, was also against the right or immunity, set up by the plaintiff, under the clause excepting fiduciary debts from the effect of that discharge. And the case has accordingly been overruled in similar cases arising under the recent bankrupt act, in which this court has taken jurisdiction, not only when the writ of error was sued out by the defendant; *Neal* v. *Clark*, 95 U. S. 704; but also when it was sued out by the plaintiff, because, as was said by Chief Justice Waite in delivering judgment in the latest case upon this point, the plaintiff "specially set up and claimed an immunity, under § 5117 of the Revised Statutes, from the operation of the discharge in bankruptcy, because of the fraudulent and fiduciary character of his debt, and the decision was against him." *Hennequin* v. *Clews*, 111 U. S. 676; *Palmer* v. *Hussey*, 119 U. S. 96, 98.

The plaintiff's second ground likewise affords ample support for the appellate jurisdiction of this court. It was specially set up and claimed by the plaintiff, that, taking the whole section together, the defendant, from the date of filing with the Comptroller of the Currency its articles of association and its organization certificate, became a corporation empowered to make contracts appropriate to the business of banking; and that any such contracts were valid as between the parties to them, even if they violated the restriction in the last clause of the section; and therefore might afford a reason for which the United States could enforce a forfeiture of the charter. This position of the plaintiff was, in effect, that, so far as he was concerned, the bank had power under the statute of the United States to make the contract sued on; and the decision of the highest court of the State, that the statute,

rightly construed, did not give such power to the bank, was a decision against the right so specially set up and claimed by the plaintiff under a statute of the United States, and is therefore reviewable by this court. Rev. Stat. § 709.

But we are of opinion that there was no error in that decision.

While by the earlier provisions of section 5136 of the Revised Statutes, the association, upon filing its articles of association and its organization certificate with the Comptroller of the Currency, becomes "as from the date of the execution of the organization certificate," and "for the period of twenty years from its organization," a body corporate, with the usual powers of a banking corporation, yet, by the last clause of that section, Congress has enacted that "no such association shall transact any business, except such as is incidental and necessarily preliminary to its organization, until it has been authorized by the Comptroller of the Currency to commence the business of banking."

By subsequent sections of the National Bank Act, the Comptroller is required to make a careful examination into the condition of the association; and, taking into consideration a full statement upon the oaths of the president and cashier, and of a majority of the directors, and any other facts which may come to his knowledge, by means of a special commission of inquiry, or otherwise, to ascertain and determine that at least fifty per cent of the capital stock has been duly paid in, and that the association has in all other respects complied with the provisions of the National Bank Act, required to be complied with before commencing the business of banking; and thereupon, and not before, to make and to give to the association a certificate, under his hand and official seal, that the association has complied with all those provisions, and is authorized to commence the business of banking. Rev. Stat. §§ 5168, 5169. The Comptroller, as this court has said, is "clothed with jurisdiction to decide as to the completeness of the organization." *Casey* v. *Galli*, 94 U. S. 673, 679; *Bushnell* v. *Kneeland*, 164 U. S. 684.

Until the association has been authorized by the Comptroller

to commence the business of banking, section 5136 peremptorily forbids the corporation to "transact any business" whatever, whether appertaining or not to the business of banking, "except such as is incidental and necessarily preliminary to its organization." The only business which it is permitted to transact is "such as is incidental and necessarily preliminary," not to carrying on, or even to commencing, the business of banking, but "to its organization," that is to say, such as is requisite to complete its organization as a corporation, which might doubtless include electing directors and officers, receiving subscriptions and payments for shares, procuring a corporate seal, and a book for recording its proceedings, temporarily hiring a room, and contracting any small debts incidental to the completion of its organization.

To take a lease is certainly to "transact business," within the meaning of the statute; and a lease for a term of years, at a large rent, of offices to be occupied by the bank "as a banking office, and for no other purpose," however necessary it might be for the transacting, or even for the commencing, of banking business by a corporation whose organization had been completed, and which had been lawfully authorized to commence the business of banking, is in no sense incidental or necessarily preliminary to the organization of the corporation.

The provision of section 5190, that "the usual business of each national banking association shall be transacted at an office or banking house located in the place specified in its organization certificate," refers to its "usual business," after obtaining the certificate from the Comptroller; and to "the place," that is, the city or town, in which, after it has been authorized by the Comptroller's certificate to commence its business of banking, its "office or banking house" is located.

The lease sued on, therefore, was clearly prohibited by the very terms of the statute from which the association assumed to derive its power to execute the lease.

The doctrine of *ultra vires*, by which a contract made by a corporation beyond the scope of its corporate powers, is unlawful and void, and will not support an action, rests, as this court

has often recognized and affirmed, upon three distinct grounds: the obligation of any one contracting with a corporation, to take notice of the legal limits of its powers; the interest of the stockholders, not to be subject to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law. *Pearce* v. *Madison & Indianapolis Railroad,* 21 How. 441; *Pittsburgh &c. Railway* v. *Keokuk & Hamilton Bridge Co.,* 131 U. S. 371, 384; *Central Transportation Co.* v. *Pullman's Car Co.,* 139 U. S. 24, 48.

When the corporation is created by a charter granted by the legislature, any person dealing with it is bound to take notice of the terms of the charter, and of the general laws restricting or defining the powers of the corporation. *Pearce* v. *Madison & Indianapolis Railroad,* above cited; *Zabriskie* v. *Cleveland &c. Railroad,* 23 How. 381, 398; *Thomas* v. *Railroad Co.,* 101 U. S. 71; *Pennsylvania Railroad* v. *St. Louis &c. Railroad,* 118 U. S. 290, 630. In like manner, when the corporation is formed under general laws, by the recording or filing in a public office of the required articles of association and certificate, any person dealing with the association is bound to take notice of the documents recorded or filed, upon which, as authorized and controlled by the general laws, depend the existence of the corporation, the extent of its corporate powers, and its capacity to act as a corporation. *Oregon Railway* v. *Oregonian Railway,* 130 U. S. 1, 25; *Central Transportation Co.* v. *Pullman's Car Co.,* above cited.

It is settled by a long series of decisions of this court, that a lease of a railroad by one railroad corporation to another, which is beyond the corporate powers of either, is unlawful and void, and cannot be made good by ratification or estoppel, so as to sustain an action upon the lease; that this is so, not only when the lease is *ultra vires* of the lessor corporation, and therefore open to the objection of disabling it from performing those duties to the public, its performance of which was the consideration upon which it received its charter from the State; but even if the lease is *ultra vires* of the lessee corporation only; and therefore not open to that particular

objection. *Thomas* v. *Railroad Co.*, *Pennsylvania Railroad* v. *St. Louis &c. Railroad*, *Oregon Railway* v. *Oregonian Railway*, and *Central Transportation Co.* v. *Pullman's Car Co.*, above cited; *St. Louis &c. Railroad* v. *Terre Haute & Indianapolis Railroad*, 145 U. S. 393, 404.

The casè at bar is no less clear than those just referred to. Congress, indeed, in establishing the system of national banks, instead of undertaking to grant special charters of incorporation upon its own judgment of the expediency of doing so in each case, has allowed corporations to be organized by voluntary acts of the associates, under the general conditions defined in the statute. But the capacity of these voluntary associations to make contracts and to transact business has not been left to depend upon their own will, however formally expressed, without any public authority having ever passed upon their responsibility and fitness. On the contrary, Congress has entrusted to the Comptroller of the Currency the power and the duty of making a careful examination into the condition of the association, including the amount of its capital stock actually paid in, and its compliance with the requirements of the statute in other respects, and, if the result of his examination is satisfactory, of granting to the association an official certificate that it is authorized to commence the business of banking; and has forbidden the corporation to transact any business whatever, except so far as required to perfect its organization, until it has received the certiffcate of the Comptroller.

The result of the Comptroller's examination, and his certificate of that result, and of the authority thereupon granted the corporation to commence the business of banking, of course appear on the records of his office, as do the articles of association and the organization certificate previously transmitted to him. Every one dealing with the corporation is bound to take notice of the facts thus appearing on a public record, upon which, by the very terms of the National Bank Act, depend the right of the association to exist as a corporation, and its capacity to transact business.

The Comptroller's examination and certificate are required,

not only for the security of those dealing with the bank, but also for the protection of the stockholders, for, without them, stockholders who had paid in the amount of their subscriptions might find themselves held liable for debts contracted by the corporation, without its having obtained the payments due from other stockholders, and otherwise complied with the requirements of the act.

One important object of Congress, in requiring the fitness of each corporation for carrying on business, with safety to its stockholders and to all persons dealing with it, to be ascertained and certified by a public officer before the corporation should have power to transact any business whatever, except to complete its organization as a corporation, doubtless was to create and maintain public confidence in the new system of national banks established by Congress to take the place of the local banks to which the people had been accustomed.

The cases on which the plaintiff principally relied are distinguishable in essential elements from the case at bar. *Whitney* v. *Wyman*, 101 U. S. 392; *Harrod* v. *Hamer*, 32 Wisconsin, 162; and *Hammond* v. *Straus*, 53 Maryland, 1, depended on provisions of local statutes, differing from those of the National Bank Act; and in *Whitney* v. *Wyman*, the corporation, after being authorized to commence business, had ratified the previous contract. *Chubb* v. *Upton*, 95 U. S. 665, was to the familiar point that one who has contracted with a *de facto* corporation cannot set up irregularity in its organization in defence of a suit upon the contract. *Smith* v. *Sheeley*, 12 Wall. 358, merely held that when land had been conveyed for full value to a *de facto* corporation, the grantor and those claiming under him could not afterwards deny its capacity to take the title. *National Bank* v. *Matthews*, 98 U. S. 621, and *National Bank* v. *Whitney*, 103 U. S. 99, depended upon section 5137 of the Revised Statutes, specifying the purposes for which a national bank might purchase, hold and convey real estate, which, as construed by the court, did not make void mortgages taken for other purposes by a banking association authorized to transact business. See also *Fritts* v. *Palmer*, 132 U. S. 282, 293, and cases cited; *Thompson* v. *St. Nicholas Bank*, 146 U. S. 240, 251.

Syllabus.

The present case is not one of irregularity of organization, or of abuse of a legal power, but of an attempt to exercise a power expressly prohibited by statute.

The lease sued on having been executed by the defendant, contrary to the express prohibition of the statute, which peremptorily forbade the corporation to transact any business, unless to perfect its organization, and thus denied it the capacity of entering into any contract whatever, except in perfecting its organization, the lease is void, cannot be made good by estoppel, and will not support an action to recover anything beyond the value of what the defendant has actually received and enjoyed. *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24, 54–61; *Logan County Bank* v. *Townsend,* 139 U. S. 67.

The plaintiff, who by the judgment below has recovered rent at the rate stipulated in the lease for all the time of the defendant's occupation, as well as all that the defendant had agreed to pay towards the repairs, has certainly no ground of complaint; and the defendant, not having sued out a writ of error, is in no position to object to the amount recovered.

*Judgment affirmed.*