FIRST NATIONAL BANK OF LESLIE *v*. STOKES.

Opinion delivered May 27, 1918.

1.  PARTNERS—RELATIONSHIP FORMED, WHEN.—Where M. and S. entered into a contract by which M. was to secure money with which S. was to purchase cattle, and to own the cattle jointly, and to share the profits, and where M. did furnish the money directly or indirectly, and S. purchased the cattle, M. and S. will be held to be partners in the transaction.

2.  BANKS AND BANKING—AUTHORITY OF NATIONAL BANKS.—The statutes of the United States relative to national banks constitute the measure of their authority, and they can not rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established. A national bank can not enter into a speculative partnership with another to buy and sell cattle.

3.  BANKS AND BANKING—ULTRA VIRES CONTRACT—ESTOPPEL OF NATIONAL BANK.—There is no estoppel against a national bank, where it is claimed that the bank entered into an *ultra vires* contract, and profited thereby.

Appeal from Searcy Circuit Court; *Jno. I. Worthington,* Judge; reversed.

*S. W. Woods,* for appellant; *J. F. Henley* and *D. T. Cotton,* of counsel.

1. It was error to refuse to give instruction No. 1, asked by plaintiff. The contract shows conclusively that Mays and Stokes were partners. 5 Ark. 270; 13 *Id.* 28; 95 *Id.* 405; 87 *Id.* 412.

2. It was error to permit Mays to testify that the contract was entered into between Stokes and the bank. There is no ambiguity in the contract and oral testimony was not admissible to contradict or vary the written contract. 50 Ark. 393; 35 *Id.* 156; 95 *Id.* 131.

3. It was error to refuse instruction No. 2 asked by appellant, and in giving No. 2 asked by defendants. The latter does not state the law and attempts to instruct on the weight of the evidence. The court also erred in giving No. 3 for defendants. There was no legal evidence upon which to base it. 84 Ark. 233; 99 *Id.* 377; 74 *Id.* 437.

4. Plaintiff was a national bank, and had no authority whatever to engage in the cattle business, even if Mays made the contract for the bank which he did not. Such a contract would be *ultra vires.*

*Bratton & Bratton,* for appellees; *F. W. Reeves,* of counsel.

1. There was no error in admitting oral testimony as to what the contract was and who made it, and that Mays merely acted as agent of the bank. 48 Ark. 543; L. R. A. 1916 A. 610; 4 A. & E. Am. Cases, 814; Jones on Ev. 155, § 434, 419; § 449, 228; § 452; 51 Am. Dec. 65; 223 Fed. 318; 37 L. R. A. 688; 116 Pac. 184; 110 N. Y. Supp. 381.

2. There is no error in the instructions given or refused. 63 Ark. 518; 44 *Id.* 423; 93 *Id.* 521; 30 Cyc. 379; 30 Am. Dec. 599.

3. The evidence sustains the verdict.

### STATEMENT OF FACTS.

The First National Bank of Leslie sued John C. Stokes and Ed Mays to recover the sum of $1,331.87

alleged to be due on a promissory note executed to the bank by Stokes to secure money with which to buy cattle for a partnership entered into between John C. Stokes and Ed Mays.

Stokes and Mays defended on the ground that a partnership was formed between the bank and Stokes for the purpose of buying cattle, and that Mays only signed the written contract between them as agent for the bank. The contract was executed in the fall of 1915, and reads as follows:

"This agreement, made and entered into by and between J. C. Stokes of Leslie, Arkansas, party of the first part, and Ed Mays of Leslie, Arkansas, party of the second part.

"Witnesseth, for and in consideration, of the sum of one dollar and other valuable consideration, paid by the party of the second part to the party of the first part, the party of the second part agrees to use his best efforts to secure money to be furnished to the party of the first part to be used in buying cattle and to keep and care for said cattle without any charge at all for his labor, the cattle are to belong to both parties, and after the money is paid back with its interest from the proceeds of the sale of said cattle, and other expenses are paid that might accrue in way of feed, barn rents, and other expenses that are out by either of said parties for the safe keeping and caring for said cattle, then the remainder which will be the profits are to be divided equal between both parties interested.

"Ed Mays,
"J. C. Stokes."

The plaintiff is a national bank, and Ed Mays was its president and W. C. Leonard its cashier at the time the business in question was transacted. According to the testimony of Leonard a partnership was entered into between Mays and Stokes for the purpose of buying cattle; that the bank lent the money to the partnership for that purpose and was to receive 10 per cent. interest; that the note was not signed by Mays because he was the presi-

dent of the bank, the largest stockholder and in reality directed the affairs of the bank. Mays explained to Leonard that he did not sign the note because it would be a violation of the United States banking laws. The partnership proved to be a losing venture. There was unpaid at the time of the institution of this suit the sum of $1,331.87, together with the interest on same from the 30th day of December, 1916, at the rate of 10 per cent. per annum.

According to the testimony of Mays, a partnership for the purpose of buying and selling cattle was entered into between the bank and Stokes; that he only signed the contract as agent for the bank, that either before or after the loan was made, he brought the matter up at a board meeting of the directors and informed them of his action; that the members of the board agreed that the bank would handle the deal.

The jury returned a verdict for the defendants, Mays and Stokes, and the bank has appealed.

HART, J., (after stating the facts). In any event the judgment must be reversed because the court erred in refusing to give instruction number one asked by the plaintiff and in giving instruction number two at the request of the defendants.

(1) Instruction number one is as follows: "I charge you that if you find by a preponderance of the testimony that the defendants, Ed Mays and J. C. Stokes, entered into a contract by which Mays was to secure money with which Stokes was to purchase cattle and to own the cattle jointly and to share the profits, and that Mays did furnish the money directly or indirectly, and that Stokes purchased the cattle, that under the law would constitute them partners." This instruction should have been given. It was the theory of the plaintiff that Mays and Stokes entered into a contract of partnership for the purchase and sale of cattle at a profit and borrowed money from the bank to use in the business of the partnership.

On the other hand it was contended by the defendants that a partnership for the purchase and sale of the cattle was made between Stokes and the bank and that Mays simply acted as agent for the bank in making the contract. The instruction asked for submitted the plaintiff's theory of the case as to the partnership, and should have been given. *Beebe* v. *Olentine*, 97 Ark. 390.

The court also erred in giving instruction number two at the request of the defendants. It reads as follows: "You are instructed that if you should find from the preponderance of the evidence that the money was secured by the defendant Ed Mays from the First National Bank to be used by the defendant, J. C. Stokes to buy cattle and the bank made the loan to said Stokes for that purpose, and that a contract was made to give either the defendent Mays or the bank one-half the profits on said cattle in addition to the payment of legal interest, this alone would not make the parties partners and you will return a verdict for the defendant Ed Mays."

This instruction was erroneous because the concluding part of it makes it peremptory in its nature. It is true that an agreement to share profits alone is not the test of a partnership, still if the contract was made between Stokes and Mays for himself instead of the bank, these parties would be liable to the bank for the money borrowed, whether there was a partnership or not. Hence it is obvious that the concluding part of the instruction was misleading and prejudicial to the rights of the bank.

(2) Moreover the plaintiff was a national bank, and had no authority to engage in the speculative business of buying and selling cattle. Even if it be assumed that Mays made the contract for the bank, the contract was *ultra vires* and there was no estoppel on the part of the bank. It is settled that the United States statutes relative to national banks constitute the measure of authority of such corporations, and that they can not rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established. *McCormick* v. *Market Bank*,

165 U. S. 538; *California Bank* v. *Kennedy,* 167 U. S. 362; *Concord First National Bank* v. *Hawkins,* 174 U. S. 364; *First National Bank of Ottawa* v. *Converse,* 200 U. S. 425, and *Merchants' National Bank of Cincinnati* v. *Wehrmann,* 202 U. S. 295.

Section 5136 of the Revised Statutes of the United States defines the corporate power of national banks. Sub-section 7 provides that it shall "exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title."

It is manifest that the power to enter into a partnership for the purpose of buying and selling cattle at a profit is not expressly conferred upon national banks, nor is it an act which may be exercised as incidental to the powers expressly conferred. Consequently such a partnership would be an *ultra vires* act.

In the cases above cited it is said that the reason that such contracts are unlawful and void rests upon three distinct grounds; the obligation of any one contracting with the corporation to take notice of the legal limits of its powers, the interest of the share holders not to be subject to risks which they have never undertaken, and, above all, the interest of the public that the corporation shall not transcend the power conferred upon it by law.

(3)    It is also well settled by the above authorities that there is no estoppel on the part of the bank. Neither can it be urged that the facts of this case bring it within that class of decisions of this court where it has been held that when an *ultra vires* contract entered into by a corporation has been fully performed by the other party and the corporation has had the benefit thereof, the contract is binding upon such corporation. *Richeson* v. *Na-*

*tional Bank of Mena,* 96 Ark. 594; *Dunbar* v. *Cazort & McGehee Co.,* 96 Ark. 308; *Bloom* v. *Home Insurance Agency,* 91 Ark. 367, and *Western Development & Investment Co.* v. *Caplinger,* 86 Ark. 287.

The record does not show that the national bank in any wise profited by the transaction. Neither can it be said that it retained any benefits from it. There was no profit to the bank from the transaction. It resulted in a material loss to the bank.

It follows that the judgment must be reversed. Inasmuch as there is no dispute about the amount of the indebtedness, there is no necessity to remand the case. The case was tried on the 27th day of August, 1917, and at that time there was a balance due the plaintiff of $1,331.87 with interest at the rate of 10 per cent. per annum from the 30th day of December, 1916.

Judgment will be entered here for that amount. It is so ordered.