## WISE v. CITIZENS NAT. BANK AT BROWNWOOD.

### No. 8522.

Court of Civil Appeals of Texas. Austin.

June 16, 1937.

Rehearing Denied July 7, 1937.

716

Woodruff & Holloway, of Brownwood, for appellant.

McGillivray Muse, of Brownwood, for appellee.

BAUGH, Justice.

Appeal is from a judgment of the trial court, predicated upon special exceptions sustained to plaintiff's petition, in a suit by Wise against said bank for $790, claimed by him as salary due for services as active vice president of said bank during the months of July, August, and September, 1934.

The material allegations of his petition were substantially as follows: That the Citizens National Bank at Brownwood was in June, 1934, organized for the purpose of taking over the assets, assuming the liabilities of, and succeeding to the business of the Citizens National Bank in Brownwood, theretofore closed and then in the hands of a conservator appointed by the Comptroller of the Currency. That on June 13, 1934, the organization certificate provided for in section 22, title 12 U.S. Code (12 U.S.C.A. § 22), was duly executed by the organizers of said bank and transmitted to the Comptroller of the Currency; that though the agreement made with F. S. Abney, as acting executive officer of said new bank, was made on June 12, 1934, whereby appellant was employed at $300 per month, said agreement was ratified by the board of directors on June 18, 1934, and again on July 7, 1934, when said board of directors approved same by resolution and elected appellant vice president of the new bank; that because of objections of the chief bank examiner to the new bank's schedule of salaries, appellant's salary under said agreement was on July 14, 1934, reduced from $300 per month to $275 per month, on which latter date the articles of association of said new bank were on file in the office of the Comptroller of the Currency.

It was also alleged that appellant began work for said new bank on July 5, 1934; that as a part of said agreement appellant was to, and did, purchase and pay cash for $2,800 of capital stock in said bank; that the employment of appellant was accomplished to meet the demands of the national bank examiner that an outside executive, not formerly connected with the old bank, be employed before the organization of the new bank would be approved; that such employment was incidental and necessarily preliminary to its organization; that a certificate of authority to said new bank to commence a banking business, provided for in section 27, title 12 U.S.Code (12 U.S.C.A. § 27), was issued by the Comptroller of the Currency on September 28, 1934; and that the new bank actually opened its doors and began transacting business on October 1, 1934.

It was also alleged that prior to appellant's employment, the Reconstruction Finance Corporation had agreed to purchase for cash $50,000 preferred stock in said new bank, on condition that an outside executive be employed; that said employment of appellant to meet this requirement was made, approved by the Reconstruction Finance Corporation, and such stock so purchased by it. That among other requirements made by the chief banking examiner were those that the new bank have $100,000 common stock all paid; $50,000 preferred stock; and $40,000 surplus; and that such surplus, larger than usually required for new banks, was required of appellee bank in contemplation of its defraying all necessary organization expenses, such as the item herein sued for, without impairment of its capital stock.

It was further alleged that by virtue of said employment contract said new bank became obligated to pay appellant such salary earned by him during the three months prior to the time it opened for business; that on or about October 15, 1934, appellant withdrew from said bank and deposited to his credit such salary for the months of July, August, and September; that a few days thereafter, at a meeting of the board of directors, F. S. Abney, also a vice president of said bank, raised the question as to whether said bank could legally pay appellant a salary for these three months. Whereupon it was agreed, in effect, that if the Comptroller of the Currency should rule adversely to such payment, then that appellant would forego the collection thereof. That neither the Comptroller nor any of his representatives ever objected to such payment, but, on the contrary, R. H. Collier, examiner for the banking department, advised that no such objection would be made.

The appellee filed numerous exceptions, two of which were sustained, and upon refusal of appellant to amend, judgment was rendered that he take nothing; hence this appeal. The exceptions sustained were as follows:

"4-A. Defendant specially demurs and excepts to said petition and each and every paragraph thereof, for the reason that the same shows upon its face that plaintiff is attempting to collect a sum based upon an alleged agreement made, for services alleged to have been rendered, prior to the time defendant received its certificate of authority to commence a banking business, and shows upon its face that said contract is illegal, ultra vires and void, and fails to state any cause of action of any character as against this defendant.

"4-B. Defendant specially demurs and excepts to said petition and each and every paragraph thereof, for the reason that said petition alleges a contract which on its face is illegal, ultra vires, void and of no effect, for the reason that said pleading shows on its face that said contract operated to impair the capital stock and surplus of said defendant bank to the extent of $825.00, prior to the time it received its certificate of authority to commence a business of banking, and by reason thereof said petition shows upon its face that said contract was a legal fraud on the defendant bank, and upon the stockholders of the defendant bank, and was in violation of the National Banking Laws, and cannot be made the foundation of a cause of action based thereon."

Under the first paragraph of section 24, title 12, U.S.Code (12 U.S.C.A. § 24, first par.), appellee bank, upon compliance with the two preceding sections of said title, when its articles of association and certificate were filed with the Comptroller of the Currency, became a body corporate as of the date of the execution of its organization certificate. But under the last paragraph of said section 24 it was expressly forbidden to "transact any business except such as is incidental and necessarily preliminary to its organization, until it has been authorized by the Comptroller of the

Currency to commence the business of banking."

■ Consequently the rights of the appellant are dependent upon the question of whether or not his services as an official of the bank, and the salary therefor, were incidental and necessarily preliminary to the organization of said bank, as that term is used in the U.S.Code. It is now settled law that national banks derive their powers from the Acts of Congress and that in the interpretation of their powers under such acts the decisions of the federal courts control. It is the contention of appellee that the contract here involved, so far as payment to appellant of any salary prior to September 28, 1934, when it was authorized "to commence the business of banking" was not only ultra vires, but was expressly prohibited by section 24, and was therefore void. Even though the chief examiner may have considered such salary during the time prior to September 28, 1934, as incidental and preliminary to its organization, the question here raised is, we think, controlled by the decision of the Supreme Court of the United States in McCormick v. Market National Bank, 165 U.S. 538, 17 S.Ct. 433, 436, 41 L.Ed. 817, where in passing upon the validity of lease entered into by such bank, in the process of organization, of premises in which to conduct its business, the court said:

"The only business which it is permitted to transact is 'such as is incidental and necessarily preliminary,' not to carrying on, or even to commencing, the business of banking, but 'to its organization'; that is to say, such as is requisite to complete its organization as a corporation, which might doubtless include electing directors and officers, receiving subscriptions and payments for shares, procuring a corporate seal, and a book for recording its proceedings, temporarily hiring a room, and contracting any small debts incidental to the completion of its organization.

"To take a lease is certainly to 'transact business,' within the meaning of the statute; and a lease for a term of years, at a large rent, of offices to be occupied by the bank 'as a banking office, and for no other purpose,' however necessary it might be for the transacting, or even for the commencing, of banking business by a corporation whose organization had been completed, and which had been lawfully authorized to commence the business of banking, is in no sense incidental or necessarily preliminary to the organization of the corporation."

■ Undoubtedly election of its officers and directors in advance would be but steps in perfecting its organization. So the selection of a banking location to be used after authority should be granted to commence business, the selection of future employees, furniture, fixtures, etc., all in advance of actual opening such bank for the transaction of a banking business, might be expedient; but the payment of such things in advance of authority to commence business is clearly not authorized by statute. The organization referred to in the federal statute manifestly refers only to the steps necessary to evolve the association of individuals into a legal entity as a corporation and give it a legal status as such; and does not, under the decisions, contemplate payment of salaries in advance to those who are to serve the corporation, after its organization is completed, as its officers and employees.

■ Nor does the fact that the contract has been performed prevent the bank, after its organization, from setting up its illegality or ultra vires character. As stated in a recent decision of the Supreme Court in Texas & P. Ry. Co. v. Pottorff, 291 U.S. 245, 260, 54 S.Ct. 416, 420, 78 L. Ed. 777, 786, "It is the settled doctrine of this court that no rights arise on an ultra vires contract, even though the contract has been performed; and that this conclusion cannot be circumvented by erecting an estoppel which would prevent challenging the legality of a power exercised."

Appellant relies in large measure on the holding of the Texas Supreme Court in McDonough v. First Nat. Bank of Houston, 34 Tex. 309. Manifestly this was not a well-considered opinion, and the pronouncement therein made was in effect repudiated by Judge Gaines in Weatherford, M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 358, 24 S.W. 795, 40 Am.St.Rep. 837. In any event, the decisions of the Supreme Court of the United States in such cases where applicable must control.

■ Nor would the question as to whether the bank and Wise would be governed by the determination of the chief banking examiner as to whether he could legally draw his salary for such period affect the legal rights of the bank to deny liability. Clearly appellant did not predicate his cause of action upon any arbitra-

tion or award, but upon his contract of employment. Consequently the question of an arbitration is not involved. And if the contract were illegal, as under the rule announced by the Supreme Court of the United States it is held to be, it was not a matter that was subject to arbitration. 3 Am.Jur. p. 841, § 11, and cases there cited.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.