**NETTLES v. CHILDS et al.**
No. 4407.

Circuit Court of Appeals, Fourth Circuit.
Jan. 9, 1939.

[11] See Blackwell Oil & Gas Co. v. Whited, 81 Okl. 45, 196 P. 688, 692; Hudspeth v. Schmelzer, supra, 77 P.2d page 1124.

John I. Cosgrove, of Charleston, S. C. (Eugene S. Blease, of Newberry, S. C., and Stephen Nettles, of Greenville, S. C., on the brief), for appellant.

Frederick H. Horlbeck, of Charleston, S. C., and Albert H. Barclay, of New Haven, Conn. (Julian Mitchell, of Charleston, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

In Nettles v. Rhett, 4 Cir., 94 F.2d 42, we held that certain common and pre-

ferred stockholders of the Peoples Investment Corporation of South Carolina, a holding company, were subject to the statutory shareholder's liability on the stock of the insolvent Peoples State Bank of South Carolina registered in the name of the holding company. The holding company itself was prohibited by South Carolina statute from acquiring or owning bank stock and was not subject to the liability under the South Carolina law; but the stockholders of the holding company were held liable as the true and beneficial owners thereof under the constitution and laws of the state. We pointed out that in Nettles v. Sottile, 184 S.C. 1, 191 S.E. 796, a stockholder who had transferred stock of the Peoples State Bank to a holding company to avoid the statutory liability was nevertheless held liable; and that the Supreme Court of South Carolina left unanswered the question whether the liability should be imposed upon the stockholders of an investment company ignorant of the fact that the corporation had invested some of its funds in bank stock; but we showed that under the evidence in the case before us, the stockholders were aware that the Peoples Investment Company had invested in the stock of the Peoples State Bank and had made no contention to the contrary.

The question in the pending case is whether four other preferred stockholders of the Peoples Investment Company, who had no knowledge that it held stock in the Peoples State Bank, were also subject to the statutory liability. The facts, common to both suits, pertaining to the expansion of the bank and the absorption by it of banks scattered throughout South Carolina before the collapse of the stock market in the fall of 1929, are set out in our former opinion; and the facts, peculiar to the present suit, are substantially as follows: During the period of general optimism then prevailing in financial circles, substantial blocks of preferred stock in the holding company were purchased by the defendants in the present suit. They were well-to-do persons past middle age, non-residents of South Carolina, who had been accustomed for some years to spend a portion of each winter in the state for rest and recreation. S. W. Childs, Albert B. Eastwood and Samuel C. Thomson, husband of Florence S. Thomson, one of the defendants, were members of Yeaman's Hall, a privately owned club near Charleston; and the fourth defendant, Anne D. Thorne, owned a winter home near Columbia. Childs became interested in the investment in the early part of 1929 at the solicitation of R. Goodwyn Rhett, who first outlined a proposal to organize a corporation to control a chain of banks in the state. With this Childs declined to have anything to do. Rhett then suggested a corporation to promote industrial activity in South Carolina, which attracted Childs and led him to induce his friends, Eastwood and Thomson, to participate. None of them at any time owned stock in the Peoples State Bank, or in any of the banks which were consolidated in the merger, or in any other South Carolina bank. According to their uncontradicted testimony, they were induced to purchase stock in the holding company by Rhett, who was the prime mover in its organization and also a member of the club. He stated that the investment in the holding company was a reasonably sound one, and that it would be a friendly and constructive act on the part of Northerners vacationing in the South to aid in the development of its struggling industries. Nothing was said to lead them to believe that bank stocks were to be bought. On the contrary, the defendants were told that the investment company was formed to invest in industrials, such as lumber, timber, cotton and textiles. The proposal was made the more attractive to men seeking relief from the cares of business by the statement that they would not be expected to take any part in the management of the corporation, but would remain merely inactive investors in the preferred stock. Their testimony was corroborated by former Senator Frederick C. Wolcott of Connecticut, who also purchased 100 shares with the understanding that the funds of the corporation would be invested in industrials and that no investment would be made in any bank of South Carolina. Under these circumstances Childs and the Thomsons together subscribed to 300 shares each of 6½% preferred stock at $100 per share, and Eastwood and Thorne to 100 shares. At the time of the institution of the suit each of the four defendants held 100 shares. The holding company was incorporated on March 29, 1929 and certificates of stock were issued to the first three stockholders mentioned on April 13, 1929, when the winter season had closed and visitors to the state might be expected to return to their homes in the North.

One year later, in April, 1930, the Thorne stock was bought at the solicitation of Rhett with like understanding that the funds of the company were invested in industrial stocks and without any notice that they were actually invested in the stock of South Carolina banks.

None of the investors ever attended any of the meetings of the directors or stockholders or inspected the records of the company, and none of them had any knowledge that the funds of the company had been invested in bank stock until after the company had gone into the hands of a receiver and the attempt was made to impose the shareholder's liability.

Four semi-annual dividends of $3\frac{1}{4}\%$ each were paid on the preferred stock during 1930 and 1931. The payments were made out of funds received by the holding company as dividends on the bank stock which it held. The defendants in the pending case, however, had no knowledge at the time of the receipt of these dividends that the earnings of the company were derived from bank stocks, and did not suspect that such was the case until after the failure of the company.

As a matter of fact, the Peoples Investment Company made no investment in industrials, but its funds were invested exclusively in shares of the banks which went into the merger. From the completion of the merger early in 1930 until the bank closed on January 2, 1932 the holding company owned 74,000 shares of the stock of the bank which amounted to 37% of the total capital, and constituted a control of the institution when combined with the shares held by officers of the bank. The evidence shows beyond controversy that contrary to the representations of Rhett, the holding company was really designed and operated by him and his South Carolina associates as a means of holding stock in the bank and for no other purpose.

There was, however, no hint of this purpose in the charter of the company which stated that the nature and purpose of the business of the company was to buy, sell and own stocks, bonds, mortgages and choses of action of all sorts, to finance the operation of any business enterprise, to buy and sell any kind of property and to do any other act or thing for the purposes of a business corporation under the general laws of the State of South Carolina. Section 7677 (5) of the Civil Code of South Carolina forbade the investment of any of the funds of such a corporation, directly or indirectly, in banking operations. Consequently there was nothing in the charter to suggest to the defendants the purpose for which the corporation was actually formed, and it was reasonable for them to assume that the law of the State would not be violated.

There were a number of facts which would have led to a disclosure of the true situation if the defendants had been inclined to participate actively in the affairs of the company, or had been unwilling to accept the representations of Rhett at their face value. Rhett was a member of the Yeaman's Hall Club and the president and the moving spirit in the bank. The bank was actively undergoing an expansion that involved taking over many banks in various parts of the State. It was known as the Peoples State Bank and the holding company was known as the Peoples Investment Company. Officers of the bank were also officers of the investment company. An examination of the books of the holding company or an inquiry into the nature of its assets and activities would have exposed its exclusive ownership of bank stock. Childs and his associates were successful men of more than ordinary acquaintance with financial affairs, and would have had little difficulty in discovering the actual situation had they made an investigation. But they made the investment at the urgent solicitation of their local acquaintances and, having come to the State of South Carolina for recreation, had no desire to participate actively in the management of business affairs.

Neither Rhett nor any other witness was offered by the receiver appointed to collect the stockholders' liability to contradict the testimony of the defendants. Under these circumstances the District Judge reached the conclusion that the funds of the holding company were invested in bank stock contrary to the representations made to the defendants and without their knowledge. There is no justification for disturbing this finding; indeed, it is not assailed by the receiver, and we accept it as the factual basis for our decision.

The receiver takes the position that public policy requires the imposition of the statutory liability upon the stockholders of the holding company in this case, regardless

of their ignorance of the ownership by it of stock in the bank. It is said that this result must follow under the ruling in Nettles v. Rhett because of the situation that existed, namely, that the Investment Company invested all of its funds in bank stock and was used by its stockholders merely as an instrumentality to finance the merger and to control the bank. But in Nettles v. Rhett, as the opinion shows, the defendant stockholders offered no testimony on the point of knowledge, and the natural inference from the facts was that the stockholders were aware of the nature of their investment. The pending question was left open, and we did not decide that the stockholders of a holding company, irrespective of knowledge, are subject to the liability attendant upon ownership of bank stock merely because the holding company has invested not only some but all of its assets in stock burdened with an extra liability.

■ We do not so hold now. That the holding company owns only bank stock is a fact of great importance in cases of this sort, but it is not conclusive. It is important when it tends to show a purpose to evade an impending liability, or when it wipes out the protection afforded by statute to creditors of a bank unless the stockholders are recognized as beneficial owners of the bank stock, notwithstanding its registration in the name of the corporation; and it is also important in determining whether the stockholders actually had knowledge of the fact. Ordinarily they would be unable to show ignorance and the unusual facts of the pending controversy relating to a few stockholders in a peculiar situation would not appear. But when ignorance of the stockholders is satisfactorily established, the exclusive holding of bank stock by the holding company is insufficient in our opinion to establish their liability. It is of the essence of the corporate relation that the stockholders are not responsible for the obligations of the corporation lawfully incurred; and it has been held with specific reference to an assessment on the shares of a bank lawfully owned by an investment company as part of its assets, that the shareholders thereof are free from liability. Burrows v. Emery, 285 Mich. 86, 280 N.W. 120. Should the obligations of innocent stockholders be enlarged in case the acquisition of shares of a bank by a holding company is illegal? Ultra vires acts on the part of directors are not naturally expected and the stockholders have the right to assume that the directors will be faithful to their trust. Citizens' Savings & Trust Co. v. Illinois Cent. R. Co., 7 Cir., 182 F. 607, 612, 613; and when such acts occur, a single stockholder may sue to restrain or annul them. Zabriskie v. Cleveland, etc., R. Co., 23 How. 381, 16 L.Ed. 488; Dodge v. Woolsey, 18 How. 331, 15 L.Ed. 401. Indeed one of the grounds on which the doctrine of ultra vires acts of corporations is based is that the interests of stockholders shall not be subjected to risks which they have not undertaken. McCormick v. Market Nat. Bank, 165 U.S. 538, 550, 17 S.Ct. 433, 41 L.Ed. 817.

It was held in Ward v. Joslin, 186 U.S. 142, 22 S.Ct. 807, 46 L.Ed. 1093, that a Kansas statute which made the stockholders of a corporation liable to its creditors in an amount equal to the par value of their stock was applicable only to indebtedness incurred in the legitimate business of the corporation, and hence the stockholders were adjudged free from liability for an indebtedness incurred without their knowledge in a transaction beyond the corporate powers. For an analogous case see Union Bank v. Wando Mining & Mfg. Co., 17 S.C. 339.

■ Bearing these rulings in mind, we see no merit in the suggestion that public policy requires that the stockholders of a corporation should be held personally liable for corporate acts performed without their knowledge or consent, merely because the directors in defiance of statute have confined the entire activities of the corporation to transactions beyond the corporate powers.[1] This conclusion harmonizes with the decisions that hold that a transfer of bank stock to a person without his knowledge does not of itself impose upon him the liability attached by law to the position of a stockhold-

---

[1] There are expressions to the contrary in the opinions in Anderson v. Atkinson, D.C., 22 F.Supp. 853 and Anderson v. Abbott, D.C., 23 F.Supp. 265, 271, which concern cases growing out of the same bank failure. It appears, however, that the charter of the corporation, 22 F.Supp. page 854, gave notice that it was organized to take over the shares of the bank and to engage generally in the business of buying, selling and holding bank and other corporate shares; and also that the cases were disposed of on motion to dismiss a bill filed in equity by the receiver against the stockholder in which the issue of knowledge was not distinctly raised.

er. Keyser v. Hitz, 133 U.S. 138, 10 S.Ct. 290, 33 L.Ed. 531; Early v. Richardson, 280 U.S. 496, 499, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658; Williams v. Vreeland, 250 U.S. 295, 39 S.Ct. 438, 63 L.Ed. 989, 3 A.L.R. 1038; Boykin v. Smith, 188 S.C. 53, 198 S.E. 171.

The appellant, however, makes the additional contention that even if the defendants did not have actual knowledge, they were put upon notice by the surrounding circumstances and would have obtained knowledge of the facts if they had made inquiry. The general principle invoked is that the law imputes knowledge when opportunity and interest, coupled with reasonable care, would necessarily impart it. United States v. Shelby Iron Co., 273 U.S. 571, 580, 47 S.Ct. 515, 71 L.Ed. 781; United States v. Booth-Kelly Lumber Co., D.C., 246 F. 970, 972; and if a person has actual knowledge of facts which would lead an ordinarily prudent man to make further investigation, the duty to make inquiry arises and the person is charged with knowledge of the facts which inquiry would have disclosed. Black v. Childs, 14 S.C. 312; Lowndes v. City Nat. Bank, 82 Conn. 8, 72 A. 150, 22 L.R.A.,N.S., 408; 46 C.J. 543, and cases cited.

In the application of the doctrine, however, each case must be governed by its own peculiar circumstances. Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 439, 12 S.Ct. 239, 35 L.Ed. 1063. The most important circumstance to be considered in this phase of the pending case is the relationship of stockholder which the defendants bore toward the Investment Company; and the question at issue should be decided by determining what inquiry, if any, an ordinarily prudent stockholder would have felt duty bound to make. It is of course well established that the officers and directors of a corporation are not the agents of the stockholders, and that stockholders are not chargeable with knowledge of the business transactions which it undertakes; that is to say, they have no duty as stockholders to inquire into the nature of the business or to influence the management, and of course they have no reason to suppose that the management will cause the corporation to engage in ultra vires acts. Rudd v. Robinson, 126 N.Y. 113, 26 N.E. 1046, 12 L.R.A. 473, 22 Am.St.Rep. 816; Hughes v. Wachter, 61 N.D. 513, 520, 238 N.W. 776, 100 A.L.R. 255; Commercial Savings Bank v. Kietges, 206 Iowa 90, 219 N.W. 44; Harri-

son v. Remington Paper Co., 8 Cir., 140 F. 385, 3 L.R.A.,N.S., 954, 5 Ann.Cas. 314. In Miller's Appeal, 1 Penny., Pa., 120, the court, considering the contention that a stockholder was charged with notice of an ultra vires act of the corporation, said (page 127): "It is true that the matter appears upon the minutes of the board, but there is nothing to show that the stockholders ever saw them. This is a matter between the officers and directors and a portion of the stockholders. While the action of the former, in the line of their duty and to the extent of their power, binds the corporation, the stockholders are not affected with notice of acts of commission or omission of the board of directors which are ultra vires." In short, the stockholder may lawfully commit his investment to the corporate control without either incurring the duty of supervision of the corporate acts or assuming responsibility therefor, and in actual practice stockholders customarily avail themselves of this freedom from responsibility.

The Investment Company in the pending case, under the management of its promoters, unlawfully engaged in the business of banking without the knowledge or consent of the defendant stockholders, contrary to the representations made to them, and in fraud of their rights. It was said in Re Locust Bldg. Co., 2 Cir., 299 F. 756, 762, that to impute knowledge to a person, there must have been a deliberate or "fraudulent turning away from a knowledge of facts which the res gestæ would suggest to a prudent mind." We find nothing reprehensible in the fact that the defendants, relying upon deliberate representations of fact, abstained from participation in the activities of the corporation and from inquiry into its affairs during their temporary sojourn in the State, as completely as if they were in a distant part of the country. That was their privilege as investing stockholders, and that was the understanding under which their investment was made.

The appellant relies particularly upon the decision of Judge Northcott of this court in United Thacker Coal Co. v. Peytona Lumber Co., D.C., 15 F.Supp. 40, in which a Trust Company sold to the Lumber Company, 1,000 shares of the stock of the Lumber Company. It was held that the Trust Company was not only chargeable with such actual knowledge as it had, but also with the knowledge that it should have acquired, that the purchase of the stock by the

Lumber Company impaired its capital and was therefore contrary to a statute of West Virginia where it was incorporated. The Trust Company was, of course, aware that the Lumber Company was engaging in a transaction which was unlawful, if it involved an impairment of capital; and the decision was in harmony with the principle that a person dealing with a corporation is bound to take notice of the extent of its corporate powers. McCormick v. Market Nat. Bank, 165 U.S. 538, 550, 17 S.Ct. 433, 41 L.Ed. 817. Under this ruling, the persons who sold bank stock to the Peoples Investment Company were chargeable with the knowledge that it had no lawful right to buy; but the case does not support the contention that the defendant stockholders, when making a lawful investment in the stock of the holding company, were bound to know that it was formed to violate a statute of the state of its creation.

The acceptance of dividends by the defendants does not impair their defense. They had no knowledge of the illegal business of the holding company until long after the dividends were received; and without knowledge, there could be no ratification or acceptance on their part of the illegal acts of the corporation. The present suit does not seek a recovery of the amount of the dividends received, but a much greater sum equal to the par value of the shares as an extra statutory liability. It was held in McDonald v. Williams, 174 U.S. 397, 19 S.Ct. 743, 43 L.Ed. 1022, that dividends paid by a solvent national bank to a stockholder entirely out of capital are not recoverable if the stockholder receiving them acted in good faith. A federal statute, 12 U.S.C.A. § 56, forbade any national bank during the continuance of its banking operations to withdraw or permit to be withdrawn in the form of dividends or otherwise, any portion of its capital; but the court held that a shareholder who in good faith receives a dividend paid out of capital could not be said to have participated in the withdrawal of capital.

The proposal that stockholders be held individually liable for the obligations of the corporate body runs counter to the principle of limited liability which is a fundamental feature of corporate organization. As applied to stockholders in a holding company, the principle normally shields them from the extra statutory liability imposed upon bank stock held by the corporation; and recourse against them in the

recent cases, cited in our decision in Nettles v. Rhett, was allowed only when the stockholders knowingly made use of the corporate form as an instrumentality to evade personal liability, or to save the bank or bring about and control an expansion of its business. The distinction is emphasized by comparing the decision of the Supreme Court of Michigan in Burrows v. Emery, 285 Mich. 86, 280 N.W. 120, with its decision in Fors. v. Farrell, 271 Mich. 358, 260 N.W. 886. The feature of participation on the part of the stockholders of the holding company is lacking as to the defendants in the pending case and the usual rule should be applied.

It does not follow that creditors will be deprived of the protection designed by the statute. In no case is that assured, since it depends upon the financial responsibility of the stockholders. The pending case presents an unusual situation, and stockholders in a corporation holding exclusively bank stock would not ordinarily be able to show a lack of knowledge. Moreover, as we recently held in Kohn v. Dixon, Receiver, 4 Cir., 100 F.2d 306, the transferor of bank stock to a corporation, disqualified by statute from owning such stock, may remain liable for an assessment thereon.

The judgment of the District Court is affirmed.