[Civ. No. 7400. First Appellate District, Division One.—February 27, 1931.]

WILFRED H. ROBINSON et al., Appellants, v. CONTRA COSTA COUNTY BUILDING & LOAN ASSOCIATION (a Corporation), Respondent.

O. G. Foelker and R. O. Bordner for Appellants.

R. H. Wight, G. H. Elmore and Morrison, Hohfeld, Foerster, Shuman & Clark for Respondent.

KNIGHT, J.—For a period of three months, commencing December 17, 1928, the defendant Contra Costa Building & Loan Association occupied and paid rent for certain offices in a building in Richmond, belonging to plaintiffs; and thereafter plaintiffs brought this action to recover the rental thereof for the succeeding five months, claiming that the same was due under a five-year written lease theretofore executed on behalf of said association by one E. B. Moore. The trial court held that the lease was not binding on the association and accordingly entered judgment in its favor, from which this appeal is taken by plaintiffs.

Section 15 (c) of the Building and Loan Commission Act (Stats. 1925, p. 253) provides in part as follows: "Before the articles of incorporation of any building and loan association, hereafter desiring to incorporate under the laws of this state, shall be filed in the office of the secretary of state of the state of California there must be attached thereto, the certificate of approval of the building and loan commissioner. . . . " And section 15 of said act (Stats. 1911, pp. 607, 614) provides: "It shall be the duty of the commissioner to require every such association, corporation, or society coming under his supervision, to procure from him, *prior to the transaction of any business,* a certificate of authority or license to transact business in this state; and it is hereby made the duty of every association, corpo-

ration, or society to comply with such requirement. . . . ''
(Italics ours.)

The articles of incorporation of the defendant association, with the certificate of approval of the building and loan commissioner attached, were filed with the Secretary of State on October 30, 1928, and on December 15, 1928, Moore signed the lease in question on behalf of said association; but the license which the association was required to obtain before it was authorized to transact ''any'' business was not issued until January 9, 1929. It would appear, therefore, that under the law as declared by the Supreme Court of the United States in the case of *McCormick* v. *Market Bank,* 165 U. S. 538 [41 L. Ed. 817, 17 Sup. Ct. Rep. 433, 435, see, also, Rose's U. S. Notes], the lease was void. That case involved the validity of a lease executed on behalf of a national bank prior to the issuance to the bank of an authorization by the Comptroller of Currency ''to commence the business of banking'', and is similar in principle therefore to the case at bar; and it was held that the lease was *ultra vires,* and consequently void. The decision therein goes on to point out that by the National Bank Act a national banking association '' 'upon duly making and filing articles of association, and an organization certificate' with the Comptroller of Currency 'shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, shall have power' 'to adopt and use a corporate seal', 'to have succession for the period of twenty years from its organization', 'to make contracts', 'to sue and be sued, as fully as natural persons', to elect and dismiss officers, to make bylaws, and to exercise 'all such incidental powers as shall be necessary to carry on the ' business of banking'. 'But no such association shall transact any business, except such as is incidental and necessarily preliminary to its organization, until it has been authorized by the Comptroller of the Currency to commence the business of banking.' '' Continuing, the court said: ''The question upon which this case turned was whether a national banking association which, after having duly made and filed its articles of association and organization certificate with the Comptroller of the Currency, but not having received from him a certificate authorizing it to do bank-

ing business, enters with the owner of real estate into a contract of lease, for a term of five years, determinable at the end of any year by either party, of an office to be occupied by the association as a banking office, is bound by the lease, according to its provisions.'' And in declaring the lease to be void the court said: ''Until the association has been authorized by the Comptroller to commence the business of banking, section 5136 peremptorily forbids the corporation to 'transact any business' whatever, whether appertaining or not to the business of banking, 'except such as is incidental and necessarily preliminary to its organization'. The only business which it is permitted to transact is 'such as is incidental and necessarily preliminary', not to carrying on, or even to commencing the business of banking, but 'to its organization', that is to say, such as is requisite to complete its organization as a corporation, which might doubtless include electing directors and officers, receiving subscriptions and payments for shares, procuring a corporate seal, and a book for recording its proceedings, temporarily hiring a room, and contracting any small debts incidental to the completion of its organization. To take a lease is certainly to 'transact business' within the meaning of the statute; and a lease for a term of years, at a large rent, of offices to be occupied by the bank 'as a banking office, and for no other purpose', however necessary it might be for the transacting, or even for the commencing, of banking business by a corporation whose organization had been completed, and which had been lawfully authorized to commence the business of banking, is in no sense incidental or necessarily preliminary to the organization of the corporation. . . . The lease sued on, therefore, was clearly prohibited by the very terms of the statute from which the association assumed to derive its power to execute the lease.''

In the present case said section 15 of the Building and Loan Commission Act doubtless contemplates the transaction of certain preliminary organization business prior to the issuance of the license by the building and loan commissioner, because the section provides that in order ''to procure such license, there must be filed with and approved by the commissioner a certified copy of its . . . *constitution and by-laws* and all subsequent amendments thereto''

(italics ours), which obviously cannot be adopted until after the association is organized. But as held in *McCormick* v. *Market Bank, supra,* the execution of a lease extending over a period of years for offices to be occupied by the association for the transaction of its permanent business "is in no sense incidental or necessarily preliminary" to the organization of the association; and therefore, since it was executed prior to the date on which the association was authorized by law to transact any business, it is void.

Plaintiffs further contend, however, that the association subsequently ratified the lease and consequently is bound by its terms. In this regard the record discloses the following facts: Moore, who was instrumental in promoting the organization of the defendant association and one of its five incorporators, negotiated with plaintiffs for the lease soon after the articles of incorporation were filed with the Secretary of State; and as stated, on December 15, 1928, he executed the same on behalf of the association. Up to that time there had been no meeting of the stockholders, nor any permanent organization effected and consequently there had been no constitution or by-laws adopted nor any offices of the corporation created. Evidence was adduced to show, however, that the building and loan commissioner and two of the incorporators had requested Moore to act as secretary, and furthermore that said two incorporators had authorized him to "contract" for the premises in question. On December 18, 1928, the day after the association went into possession of the premises, the stockholders met and effected a permanent organization including the election of a board of directors and the officers of the association, the personnel of which did not include any of the five original incorporators; and immediately following such permanent organization Moore turned over to the newly elected officers all of the records and documents in his possession, including the lease in question. But in this connection the trial court found that neither the directors nor the officers had any actual knowledge of the execution of the lease until just prior to the time the premises were vacated; and there is evidence to support such finding.

Even assuming that in the case of an ordinary private corporation, the foregoing circumstances would be legally sufficient to constitute a ratification of the lease on the part

of the corporation, it is evident that in the present case it cannot be so held because as held in *McCormick* v. *Market Bank, supra,* ''The lease sued on having been executed by the defendant, contrary to the express prohibition of the statute, which peremptorily forbade the corporation to transact any business, unless to perfect its organization, and thus denied it the capacity of entering into any contract whatever, except in perfecting its organization, the lease is void, cannot be made good by estoppel, and will not support an action to recover anything beyond the value of what the defendant has actually received and enjoyed. (*Central Transp. Co.* v. *Pullman's Car Co.,* 139 U. S. 24, 54–61 [35 L. Ed. 55, 11 Sup. Ct. Rep. 478]; *Logan County Bank* v. *Townsend,* 139 U. S. 67 [35 L. Ed. 107, 11 Sup. Ct. Rep. 496].)'' ''The doctrine of *ultra vires,*'' says the court, ''by which a contract made by a corporation beyond the scope of its corporate powers, is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: the obligation of anyone contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders, not to be subject to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law. (*Pearce* v. *Madison & Indianapolis Railroad,* 21 How. (U. S.) 441 [16 L. Ed. 184]; *Pittsburgh etc. Railway* v. *Keokuk & Hamilton Bridge Co.,* 131 U. S. 371, 384 [33 L. Ed. 157, 9 Sup. Ct. Rep. 770]; *Central Transportation Co.* v. *Pullman's Car Co.,* 139 U. S. 24, 48 [35 L. Ed. 55, 11 Sup. Ct. Rep. 478, see, also, Rose's U. S. Notes].)''

The judgment is affirmed.

Cashin, J., and Tyler, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 28, 1931.