[L. A. No. 12870. In Bank.—November 30, 1932.]

WILL C. WOOD, as Superintendent of Banks, etc., Respondent, v. IMPERIAL IRRIGATION DISTRICT (a Municipal Corporation), Appellant.

750

Chas. L. Childers and D. B. Roberts for Appellant.

H. J. Hankins, A. L. Cowell and T. C. Boone, *Amici Curiae* on Behalf· of Appellant.

Elbert W. Davis, J. H. Hoffman, Albert A. Rosenshine and Sullivan, Roche, Johnson & Barry for Respondent.

SEAWELL, J.—This appeal comes to us upon an agreed statement of facts. The Imperial Irrigation District, the

powers of which were considered by this court under the act by which it was created and governed in the case of *Crawford* v. *Imperial Irr. Dist.*, 200 Cal. 318 [253 Pac. 726], had on deposit in the name of its treasurer with the Farmers and Merchants Bank of Imperial on the nineteenth day of June, 1925, in its checking account, the sum of $6,993.61. On that day said district deposited with said bank an additional sum of $40,000, the bank issuing to said district four of its certificates of deposit in the sum of $10,000 each, as evidence of said deposit of $40,000. On said day the total amount of money so deposited by the district amounted to approximately the sum of $47,000. This sum was used by the bank in the purchase of bonds of the United States of the par value of $50,000. On the same day, to wit, June 19, 1925, said bank delivered to the Imperial Irrigation District said bonds as security for the payment of the several sums of money then deposited, or which might thereafter be so deposited. Further sums of money were deposited by the district in its checking account with said bank. On October 10, 1927, said district had on deposit in its account with the bank the sum of $13,254.27. On said last-named day, to wit, October 10, 1927, the plaintiff, as Superintendent of Banks of the State, closed said bank and took possession of its business and property, including $9,651.54 in money, in accordance with the provisions of section 136 of the Bank Act of this state. At the time said property was taken over by the Superintendent of Banks said four certificates of deposit issued to said district were unpaid. Subsequent to October 10, 1927, said bonds matured, and the government paid to the district the full amount of principal and accrued interest, totaling the sum of $51,062.50.

This action was brought by plaintiff to recover from defendant district said sum of $51,062.50. Judgment went for plaintiff for said amount, together with interest, and defendant has appealed. If the trial court's conclusions of law are sound, the judgment must be affirmed.

Said court found, first, that the deposits made by said district with said bank were legally and lawfully made, and that the relationship between said bank and district as to deposits at all times constituted the relationship of debtor and creditor; second, that the pledging of the bonds de-

scribed herein as collateral security for said deposits was unlawful, and the bank exceeded its powers in attempting to do so; third, that neither said bank nor plaintiff Superintendent of Banks had received, or were or are, holding any money or property in trust for defendant district; fourth, that defendant district is entitled only to a general claim against the assets of the commercial department of said bank for the amount of its claims, as filed against said bank and allowed by the Superintendent of Banks, without preference over other depositors of the commercial department of said bank. No relief whatever was granted defendant on its theory that the giving and taking of said securities was a transaction authorized by law; nor upon the theory that if said transaction was not authorized by law, then said funds never became a part of the bank's assets and were from the first impressed with a trust in favor of defendant district, and neither the bank nor the superintendent of said bank in liquidation was entitled to hold them against defendant's claim.

One of the principal questions presented by this appeal, is, What is the status of an irrigation district under our Constitution, statutes and decisions, as interpreted by this court? The subject has been before this court many times, and while no very elaborate or comprehensive definition has been given, enough has been said in our decisions to give the profession and the layman a general idea as to the powers, functions and office of an irrigation district. In the fairly recent case of *Crawford* v. *Imperial Irr. Dist.*, 200 Cal. 318, 325 et seq. [253 Pac. 726, 729], the appellant district in that case and the appellant district in the instant case being the same entity, this court, in considering the character of an irrigation district, said:

"While there is language to be found in some of the decisions of this state which might be taken as holding that an irrigation district is a municipal corporation (*People* v. *Cardiff Irr. Dist.*, 51 Cal. App. 307, 312 [197 Pac. 384]), we think that the great weight of authority is to the effect that an irrigation district is not strictly a municipal corporation. (*Huck* v. *Rathjen*, 66 Cal. App. 84 [225 Pac. 33]; *Whiteman* v. *Anderson-Cottonwood Irr. Dist.*, 60 Cal. App. 234, 243 [212 Pac. 706]; *Turlock Irr. Dist.* v. *White*, 186 Cal. 183 [17 A. L. R. 72, 198 Pac. 1060].)"

The above case quotes as follows from the Turlock case, *supra:*

"The nature of an irrigation district has been a matter of judicial investigation and interpretation, and it has been held that such a corporation is not a municipal corporation, but a 'public corporation for municipal purposes'. (Citing authorities.)

"As to swamp-land, drainage, levee, and reclamation districts, similar to irrigation districts, it has been held that they were not municipal corporations." (Citing authorities.)

In *Bettencourt* v. *Industrial Acc. Com.,* 175 Cal. 559 [166 Pac. 323], it was held, on page 561, that: "But reclamation districts organized as was this petitioner possess no political nor governmental powers, are not organized for political or governmental purposes, and are therefore not public corporations at all. Indeed, they are not in strictness corporations, public or private, but governmental mandatories or agents, vested with limited powers to accomplish limited and specific work."

While it is true that the main case quoted states that it was not necessary to decide the point presented in that case to determine the strict legal status of an irrigation district, it nevertheless repeats that under the many authorities of this state bearing directly upon the question an irrigation district is not, strictly speaking, a municipal corporation. We deem it unnecessary to cite the long list of authorities sustaining this conclusion, as numerous references thereto are to be found in the cases herein cited, and others may be added upon a most cursory investigation of the general subject. An irrigation district is not a political subdivision of the state or county, or a political subsidiary at all. (*Huck* v. *Rathjen, supra; Tarpey* v. *McClure,* 190 Cal. 593 [213 Pac. 983].)

The original section of the Constitution, article XI, section 16½, adopted November 6, 1906, permitted moneys belonging to the state, or to any county or municipality within the state, to be deposited in any national bank or banks within the state in the manner provided by law, provided such banks should furnish security for such deposits of the kind, amount, and upon the terms therein prescribed. In 1912 said section was amended so as to include within

the securities which might be accepted for such deposits bonds of "any irrigation district within this state". Although the subject of irrigation districts was specifically brought to the attention of the framers of the amendment, such districts were not included in the class of governmental bodies to which securities must be given to protect the deposits. No other substantial change was made. The amendment of 1918 provided that all moneys belonging to the state or to any county or municipality within this state might be deposited in any national bank or banks in such manner and under such conditions as might be provided by any law adopted by the people under the initiative or by two-thirds vote of each house of the legislature and approved by the Governor, and subject to the referendum.

In enumerating the entities that may make said deposits the concluding lines of the amendment added specifically "city and county, city, town". This addition, it will be noted, includes only well-recognized municipal bodies, which are organized strictly for political and governmental purposes, and does not include development or improvement districts vested with limited powers to accomplish limited and specific work for private profit, even though they be agencies of the state. In 1922 said section 16½ of the Constitution was again amended by adding to the specifically named entities issuing bonds which might deposit moneys in banks outside of the state for the payment of the principal or interest of such bonds at the place or places at which the same are payable, "or other political subdivision". On November 4, 1924, the section was amended into its present form. This amendment provides that "all moneys belonging to, or in the custody of the state, or any county, city and county, city, town, municipality, or other political subdivision, within this state may be deposited in any national bank or banks within this state, or in any bank or banks organized under the laws of this state, in such manner and under such conditions as may be provided by any law adopted by the people under the initiative or by a two-thirds vote of each house of the legislature and approved by the governor and subject to the referendum; . . . "

This amendment provides, as does the 1922 amendment, that laws then existing governing said deposits shall continue in force until amended or changed or repealed, as in

said amendment provided. The words "or other political subdivision", following the generically named bodies, to wit, *state, county, city and county, city, town, municipality,* which are governmental in their essence, makes unusually applicable the doctrine of *ejusdem generis,* and would exclude from consideration "irrigation districts".

■ Appellant cites article XI, section 13, of the Constitution, which provides that the legislature shall not delegate to any special commission, private corporation,. company, etc., any power to control or interfere with any county, city, town or municipal improvement, money, property or effects, or to levy taxes or assessments, or perform any municipal function, except that the legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state. We find nothing in the language of said section which is helpful to appellant's case. It would seem, on the contrary, that a distinction was recognized to exist between a municipality, on one hand, and irrigation, reclamation and drainage districts on the other, giving to irrigation, reclamation and drainage districts a different classification.

■ Appellant's contention that irrigation districts are municipalities or political subdivisions finds no favor or aid in any provision of the Constitution to which our attention has been directed.

■ Neither the original amendment of 1906 nor any subsequent amendment thereto is self-executing. All of the amendments require legislation to make the constitutional provisions effective. The original and each amendment thereof provides that all money belonging to the state, or to any county, etc., may be deposited in banks "in such manner and under such conditions as may be provided by law". As to the 1924, 1922 and 1918 amendments, the procedure shall be under the initiative or by a two-thirds' vote of each house of the legislature. As to the original section and the amendment of 1912, the passage and adoption of a bill affecting deposits of moneys in the ordinary manner was sufficient to make it a law.

We are of the view that the language of the constitutional provisions does not permit the inclusion of an irrigation

district as one of the entities which may be empowered to draw from the assets of a bank its securities as a protection against loss for the benefit of one class of depositors to the prejudice of another.

We now pass to a consideration of the language of the statutes which appellant relies upon as authority for its retention of said bonds. The first act is found in Statutes and Amendments of 1923, chapter 16, page 21, entitled "An act to authorize and control the deposit in banks of money belonging to or in the custody of the state. . . . " This act provides that all moneys under the control of the state treasurer belonging to or in the custody of the state shall so far as possible be deposited by the state treasurer to the credit of the state in such state or national banks in the state as the treasurer, with approval of the Governor and state controller, shall select for the safekeeping of such deposits, and any such moneys so deposited shall be deemed to be in the state treasury. Furnishing security for such deposits, and the manner in which they shall be made, is specifically provided for. Surely this act has no application to the control of the funds or business of an irrigation district, or to funds which are not under the control of the state treasurer, but applies solely to state moneys.

In the same volume, in numerical order, is chapter 17, entitled "An act to authorize and control the deposit in banks of money belonging to or in the custody of any county or municipality within this state. . . . " This act provides that "all moneys belonging to or in the custody of any county or municipality within the state, shall so far as possible, be deposited in such state or national bank or banks as the treasurer of the county or municipality, as the case may be, or other official having the legal custody thereof, shall select for safekeeping of such deposits, and any sum so deposited shall be deemed to be in the treasury of such county or municipality. . . . " The banks in which such money is deposited are required to furnish security as in said act required, and the depositary banks are selected from those agreeing to pay the highest rate of interest, not less than two per cent per annum, as may be determined by bids to be submitted in such manner as the treasurer may direct. It is further provided that such deposits shall not exceed the paid-up capital, exclusive of reserve and sur-

plus, of any depositary bank and also that no treasurer of a county or of a municipality shall deposit more than twenty per cent of the public moneys under his control in any one bank. Incidentally it may be here noted that none of the requirements governing deposits as provided by the several acts was complied with by the district in the instant case, and had said defendant district complied with the act which is invoked in its behalf, the entire loss would not have fallen upon one bank to the detriment of its general depositors. The act in question employs language and deals with subject matter which relates so exclusively to governmental affairs, such as counties, cities and political subdivisions, as commonly understood, that it seems illogical to attempt to apply the act to moneys which are the property of, or under the control of, irrigation districts. For example, it provides that the securities shall be approved by the *treasurer* and *attorney* of said counties and municipalities; directs the deposit of money under the control of any *tax collector* of any county or municipality, and is drawn in language which makes it more appropriate and better fitted to county and municipal affairs than to irrigation districts, which may or may not have such officers as are mentioned in the act.

From what has already been said it follows that the powers conferred by the Bank Act, section 21a, upon the "United States, State of California, the counties, cities and counties, cities and towns of said state of California, and *any other governmental or political subdivision*" permitting the securing of deposits does not, under our decisions, include irrigation districts. Appellant, however, rests its claim, in case all others fail, upon section 27b of the Irrigation District Act (Stats. 1927, p. 188), effective July 29, 1927, approximately two months and a half before the property and assets of the bank passed into the hands of the Superintendent of Banks, trustee in charge of the liquidation of said bank. Said section provides:

"Any money belonging to any irrigation district organized or existing under this act may be deposited by the treasurer or any officer of such district having legal custody of such money in any state or national bank or bank in this state, and said district shall receive such rate of interest therefor, as may be agreed upon by the officer making such

deposit and said bank or banks. Such treasurer or other officer shall require such bank or banks in which such money is deposited to furnish as security for such deposits, bonds of the United States, or of this state or of any county, municipality, school district, or irrigation district within this state that are legal investments for savings banks of this state, the market value of which bonds shall at all times be at least ten per cent in excess of the amount of the deposits secured thereby; or in lieu of such bonds such treasurer or said other officers shall be entitled to take as security for such funds so deposited, depositary bonds duly executed and delivered by a surety company, duly authorized to do business in the State of California, which depositary bonds shall be and remain in an amount not less than the amount of the funds so deposited and held in said bank or banks. The cost of such depositary bond or bonds may be borne by the district. Such treasurer or said other officers shall not be responsible for any loss of public moneys resulting from the deposit thereof in banks when made in accordance with the provisions of this section.''

The foregoing act was not complied with even in the event it was available to appellant, in this, that the treasurer of said district did not at any time require the bank in which the district's funds were deposited to furnish as security therefor bonds, the market value of which was at all times at least ten per cent in excess of the amount of the deposits secured thereby, or equal to the amount secured thereby.

We are of the view that the contract or agreement to pledge the bank's assets as security for the deposit made June 19, 1925, was illegal as an original transaction, being in contravention of section 21 of the Bank Act, which declares that ''The capital and assets of such bank are a security to depositors and stockholders, depositors having the priority of security over stockholders.'' (See, also, sec. 27 of the Bank Act.) The only manner in which the priority of one depositor may be secondary to the right of another depositor is by statutory enactment, which does not exist in favor of appellant under the law as it existed when it made its said deposits. The contract was not validated by the adoption of the act of July 29, 1927. At the time said moneys were deposited with the bank they became a

part of the common fund of the commercial department of said bank, subject to the same risks as the moneys of all other persons who made deposits in said commercial department. The relationship of debtor and creditor was created. Prior to the security transaction herein appellant had actually made deposits with said bank for which no security was taken. No attempt was made to reaffirm, ratify or bring the transaction within the purview of the act which became a law some two months and twelve days before the bank was taken over by the Superintendent of Banks, and no act could have been done by the parties to the transaction which would have retroactively converted the common character of said deposits into secured or preferred deposits. The funds had long since been disbursed through the commercial department as other depositors' funds had been disbursed. They were not then in the bank. No deposits were made within the time in which the irrigation district was entitled to receive security for deposits, and only those bodies which made deposits and took security therefor under the express sanction of existing law were entitled to enjoy the extraordinary privilege provided by statute. ▉ A contract void because it stipulates for doing what the law prohibits is incapable of being ratified. The recognition of the contract for a long period after the act becomes legal does not constitute a ratification of the contract. (*Handy* v. *St. Paul Globe Publishing Co.*, 41 Minn. 188 [16 Am. St. Rep. 695, 4 L. R. A. 466, 42 N. W. 872]; *Stevens* v. *Boyes Hot Springs Co.*, 113 Cal. App. 479 [298 Pac. 508]; *Robinson* v. *Contra Costa etc. Assn.*, 112 Cal. App. 252 [296 Pac. 922]; *Biggart* v. *Lewis*, 183 Cal. 660, 671 [192 Pac. 437]; *Colby* v. *Title Ins. & Tr. Co.*, 160 Cal. 632 [Ann. Cas. 1913A, 515, 35 L. R. A. (N. S.) 813, 117 Pac. 913].) Neither does such a contract create an estoppel. (*Hedges* v. *Frink*, 174 Cal. 552, 555 [163 Pac. 884]; *Colby* v. *Title Ins. & Tr. Co., supra; Tate* v. *Commercial Bldg. Assn.*, 97 Va. 74 [75 Am. St. Rep. 770, 45 L. R. A. 243, 33 S. E. 382].)

The act which became effective July 29, 1927, and which specifically authorizes irrigation districts to receive securities for deposit of their funds made with banks, does not purport to be a curative or remedial act, or to operate under any circumstances retroactively. Even where there is no pro-

hibitory statute it is held that an agreement to give security for county deposits is *ultra vires* and unlawful. ▮ Statutes adopted with a view of authorizing banks to pledge their assets to depositors as security therefor must be strictly construed, and nothing should be left to implication or doubtful construction. In the absence of clear statutory provisions authorizing such pledging of assets, the general policy of the law will not sanction it. The reason of the rule is briefly stated by the Idaho Supreme Court in *Porter* v. *Canyon County etc. Ins. Co.*, 45 Idaho, 522 [263 Pac. 632], as follows:

"It has been held that even in the absence of a statute prohibiting it, a bank cannot pledge its assets to secure a depositor, such act being *ultra vires* and void. (Citing *Divide County* v. *Baird*, 55 N. D. 45 [51 A. L. R. 296, 212 N. W. 236], and *Commercial Bank & Trust Co.* v. *Citizens Trust & G. Co.*, 153 Ky. 566 [Ann. Cas. 1915C, 166, 45 L. R. A. (N. S.) 950, 156 S. W. 160].) The reason underlying these two strong cases may be reduced to the proposition that a bank organized under a statute permitting it to do business on terms and conditions and subject to liabilities prescribed in the statute has no power to pledge its assets to secure a deposit where such power is not expressly awarded by law.

"Under the laws of this state the commissioner stands as a trustee to protect the rights of all claimants, particularly those of depositors and general creditors. Under the law the right of the defendant can be only that of a general depositor as such; it can acquire no greater right than that inuring to any other general depositor as such."

Discussing the question of public policy of securing depositors where there is no express statutory warrant for doing so, the court in *Commercial Bank & Trust Co.* v. *Citizens Trust & Guaranty Co.*, 153 Ky. 566 [Ann. Cas. 1915C, 166, 45 L. R. A. (N. S.) 950, 156 S. W. 160], said:

"Large depositors, if secured, might absorb the greater part of the assets of the bank and inflict loss upon unsecured depositors and financial ruin upon innocent stockholders under the double liability law. The law contemplates, and was evidently framed to insure fair and uniform dealings by the banks with all of their depositors. A secret pledge to secure one, while others are left without security, al-

though it may be without specific intent to defraud, would nevertheless, in case of loss, justify such an inference.

"Public policy will not, therefore, tolerate a practice which might, sooner or later, in the event of financial trouble with the bank, enable it to pay and protect the favored few at the expense of the equally deserving many. If the fact was known that a bank had secured some one or more of its depositors and left the others unsecured, no prudent person would deposit with it. No bank would advertise that it engaged in such a practice because depositors who were not provided for would be driven away. The very fact that the transaction is one that will not stand the test of publicity is a strong argument against its legality as well as its necessity. Banks publish statements of their assets and individuals deposit on the faith of these published statements. It is well known that good statements as to assets induce people to deposit their money in banks making such statements. It would be a crowning act of injustice to hold that deposits thus induced are nevertheless cut off from sharing in these assets until some unknown favored few, who have been secretly secured, are satisfied; and it would be a palpable fraud on the part of a bank thus to procure deposits when its assets were secretly pledged. . . . We are unwilling to hold that a bank, in the absence of some statutory authority, may exercise a right or power which would enable it to perpetrate a fraud upon any of its depositors."

Appellant takes the alternative position that the making of the deposits and the giving of the security was either lawful or unlawful. If unlawful it was unlawful on the part of one party as well as on the part of the other. In other words, if the district could not make the deposit without taking security for such deposit, and the bank was not authorized to give the security, then neither could the deposit be lawfully made nor the security lawfully given; that it was a single transaction, and if unlawful both parties are equally at fault, and a trust is immediately created earmarking the particular money which never became the assets of the bank at all, and it must be returned to appellant. We are constrained to hold with the trial court, that the deposit was not forbidden by law, but that

the giving over of the bonds as security for the deposit was unlawful.

The powers of appellant district, as stated earlier in this decision were considered in the case of *Crawford* v. *Imperial Irr. Dist.*, 200 Cal. 318 [253 Pac. 726, 732]. We there held that its powers were broad and comprehensive, even exceeding in some respects the powers of an ordinary municipal corporation. Its board of directors is authorized to "manage and conduct the business affairs of the district". It would be unreasonable, difficult and most inconvenient to conduct a business of the magnitude of appellant in this rapidly moving age if it should be denied the facilities which banks offer for the transaction of business. The general powers conferred upon said district give its officers the right to deposit its funds in a bank. Appellant's argument against the lawfulness of deposits thus made rests largely upon the pronouncements found in *Yarnell* v. *City of Los Angeles*, 87 Cal. 603 [25 Pac. 767]. A provision of the city charter of the city of Los Angeles directing the city council to appoint as a depository of public funds the bank offering the highest rate of interest thereon, and further providing that the city council should direct the city treasurer to deposit with said bank all money received or collected by him, was held to be unconstitutional. The basis of that opinion was that said charter provision was contrary to certain sections of the Constitution and sections 424 and 426 of the Penal Code. The sections of the Constitution—13, 16 and 17, article XI—against which the charter provisions offended, related either directly or indirectly to the deposit of public funds or the making of a profit by the officers having possession or control thereof. The Yarnell decision was rendered in 1891. Since that year, in 1906, the Constitution was amended by the adoption of section 16½, article XI. That section expressly legalizes the deposit of public funds by the custodian thereof in such manner and under such conditions as may be provided by law. The legislature thereafter, in obedience to the mandate of the Constitution, enacted certain statutes prescribing the conditions under which the several public moneys enumerated in said section 16½ of the Constitution might be deposited in the banks of this state. The acts in effect at the time appellant's moneys were deposited in said bank are to be found

on pages 21 and 25 of the Statutes of 1923, and have received sufficient attention. Suffice it to say, that since the adoption of section 16½ of article XI of the Constitution, and the amendment of section 424 of the Penal Code in 1905, neither the Constitution of the state nor any statute prohibits or makes it illegal for public funds to be deposited in the banks of the state.

Appellant complains somewhat bitterly, and probably not without color of moral justification, and invokes the doctrine of estoppel against said bank based upon the stipulated fact that said bank solicited said deposits, and had it known that the bank could not have lawfully pledged its bonds it would not have made the deposits. It is also stipulated that the Superintendent of Banks was charged with knowledge that the pledged bonds were in possession of the district for more than two years, and he made no complaint as to its possession and claim. The difficulty with this proposition is that the rights of the depositors, innocent third parties, are involved in the transaction, and their protection is one of the first concerns of the law. Their rights are surely equal with those of the district, unless the statute has given a preference to said district, which was an actor in the transaction. If it acted under a mistake of law, its position should not be better than that of other depositors who were ignorant of the bank's approaching insolvency as well as the attempt on the part of the district to secretly secure its deposits.

From our examination of the various decisions, statutes and constitutional provisions, we are brought to the conclusion that the deposit of appellant's funds with the bank was not an unlawful or invalid act, but that its right to receive security for its deposit did not find support in law, and, this being so, it must stand upon the same level with the general depositors, its relation with the bank being that of debtor and creditor.

The judgment is affirmed.

Waste, C. J., Curtis, J., and Tyler, J., *pro tem.*, concurred.

Shenk, J., being disqualified, did not participate.

Rehearing denied.