The Attorney General has received your request for an official opinion wherein you ask the following questions: "1. Must the funds derived by revenue and other means by the Grand River Dam Authority and disbursed in accordance with 82 O.S. 865 [82-865] (1971) be handled and reported as agency special account funds in accordance with 62 O.S. 7.2 [62-7.2] through 62 O.S. 7.5 [62-7.5](a) (1979)? "2. Must the Grand River Dam Authority comply with the provisions of the Central Purchasing Act, 74 O.S. 85.1 [74-85.1] (1971) et seq., as amended? (Opinion of June 3, 1960 exempted Grand River Dam Authority from the Central Purchasing Act was based upon provisions of 74 O.S. 85.12 [74-85.12] which have been amended.) "3. Must the Grand River Dam Authority make purchases and let contracts through the State Board of Public Affairs in accordance with 62 O.S. 41.16 [62-41.16] (1979)? "4. Must the Grand River Dam Authority itemize, budget and report data processing expenditures to the State Director of Finance in accordance with 62 O.S. 41.41 [62-41.41] (1979)? "5. Must the Grand River Dam Authority comply with the provisions of the Data Processing Planning and Management Act of 1971, 74 O.S. 118.1 [74-118.1] (1971) et seq., as amended? "6. Must the Grand River Dam Authority comply with the various Acts pertaining to administrative controls, such as: The Records Management Act, 67 O.S. 201 [67-201] (1971) et seq.; Employee blanket bonds, 74 O.S. 85.26 [74-85.26] (1979); Inventory records preparation and submission, 74 O.S. 110.1 [74-110.1] (1979); State Lands Act, 74 O.S. 129.1 [74-129.1] [74-129.1] (1971); The Archives and Records Commission Act, 74 O.S. 564 [74-564] (1971) et seq., as amended; State Agency Rules and Regulations Act, 75 O.S. 251 [75-251] (1971) et seq., as amended; and Administrative Procedures Act, 75 O.S. 301 [75-301] (1971) et seq., as amended." In answering your inquiries, it is necessary to review the statutory basis for creation of the conservation and reclamation district known and referred to as the Grand River Dam Authority (GRDA) in 1935. The basic statutory provision providing for the creation of GRDA is 82 O.S. 861 [82-861] (1978) which provides as follows: "There is hereby created within the State of Oklahoma a conservation and reclamation district to be known as `Grand River Dam Authority' (hereinafter called the District), and consisting of that part of the State of Oklahoma which is included within the boundaries of the Counties of Adair, Cherokee, Craig, Delaware, Mayes, Muskogee, Ottawa, Osage, Pawnee, Payne, Lincoln, Logan, Tulsa, Wagoner, Sequoyah, Haskell, Latimer, Pittsburg, McIntosh, Creek, Okmulgee, Nowata, Washington and Rogers. Such district shall be, and is hereby declared to be a governmental agency, body politic and corporate, with powers of government and with the authority to exercise the rights, privileges, and functions hereinafter specified, including the control, storing, preservation and distribution of the waters of the Grand River and its tributaries, for irrigation, power and other useful purposes and reclamation and irrigation of arid, semiarid and other lands needing irrigation, and the conservation and development of the forests, water and hydro-electric power of the State of Oklahoma. "Nothing in this act or in any other act or law contained, however, shall be construed as authorizing the District to levy or collect taxes or assessments, or to create any indebtedness payable out of the taxes or assessments, or in any manner to pledge the credit of the State of Oklahoma, or any subdivision thereof. "All that body of land and the water impounded above the Pensacola Dam shall be hereafter designated and known as `Lake O' The Cherokees.'" Your first inquiry pertains to 82 O.S. 865 [82-865] (1971) and whether funds disbursed thereunder must be handled and reported as agency special account funds in accordance with 62 O.S. 7.2 [62-7.2] through 62 O.S. 7.5a [62-7.5a] (1979), inclusive. Section 865 provides as follows: "The moneys of the district shall be disbursed only on check, drafts, orders, or other instruments, signed by such persons as shall be authorized to sign the same by the bylaws or resolution concurred in by not less than four (4) directors, such persons may execute or cause to be executed checks with a facsimile signature in lieu of their manual signatures. The general manager, the treasurer and all other officers, agents, and employees of the district who shall be charged with the collection, custody or payment of any funds of the district shall give bond conditioned on the faithful performance of their duties and an accounting for all funds and property of the district coming into their respective hands, each of which bonds shall be in form and amount and with a surety (which shall be a surety company authorized to do business in the State of Oklahoma) approved by the Board, and the premiums on such bonds shall be paid by the district and charged as an operating expense." 62 O.S. 7.2 [62-7.2] (1978) recreates the Special Agency Account Board for the purposes of approving and establishing agency special accounts in the official depository of the State Treasury and establishes the membership of such Board. 62 O.S. 7.3 [62-7.3] through 62 O.S. 7.5a [62-7.5a] (1978) require monthly reports from each state agency on forms prescribed by the Director of State Finance; establish the procedure for withdrawals from agency clearing accounts by voucher of such agency; the classification of such funds in the State Treasury and establish the procedure for issuance of checks or warrants against each such class of funds; and prescribe the manner of issuance of vouchers against agency clearing accounts and agency special accounts and the signature requirements therefore. 62 O.S. 7.1 [62-7.1] (1873) provides in pertinent part as follows: "B. It shall be the duty of each state agency, officer or employee, to deposit daily in the agency clearing account, agency special account, established under Section 17 7.2 of this Act, all monies of every kind, including but not limited to: 1. Tax revenues; 2. Receipts from licenses, examinations, per diem and all other reimbursements, fees, permits, fines, forfeitures and penalties; and 3. Income from money and property, grants and contracts, refunds receipts, reimbursements, judgments, sales of materials and services of employees, and nonrevenue receipts, received by a state agency, officer or employee by reason of the existence of and/or operation of a state agency." (Emphasis added). Pursuant to 861, supra, and Sheldon v. Grand River Dam Authority,182 Okl. 24, 76 P.2d 355 (1938), the GRDA is a governmental agency created for the purpose of conducting a state function. Further, the GRDA, is among that class considered as state agencies and instrumentalities. Sheldon, supra. Pursuant to 82 O.S. 863 [82-863] (1971) the seven (7) directors of the GRDA are appointed by the Governor by and with the advice and consent of the Senate. Thus, such directors are beyond question state officers. The terms "state officer", "county officer," etc. have been accepted in law to be synonymous with "public officials." West v. Board of Comr's. of Caddo County, 59 Okl. 169, 158 P. 354
(1916). Therefore, it seems clear that funds derived by revenue and other means by the GRDA must be handled and reported in the manner and to the extent required under 62 O.S. 7.2 [62-7.2] (1979) and 62 O.S. 7.3 [62-7.3] through 62 O.S. 7.5a [62-7.5a] (1973). Your second inquiry pertains to whether or not the GRDA must comply with the provisions of the Central Purchasing Act, 74 O.S. 85.1 [74-85.1] (1971) et seq., as amended. You state that the Attorney General Opinion of June 3, 1960 exempted GRDA from said Act pursuant to 74 O.S. 85.12 [74-85.12] (1971) which has been amended. The term "state agency" as defined in 74 O.S. 85.2 [74-85.2] is as follows: "When used in this act the following terms, in addition to their usual definitions, shall have the meanings ascribed to them in this section unless context otherwise requires: "(1) The terms `state agency' and `agency' shall include any office, officer, bureau, board, counsel, court, commission, institution, unit, division, body or house of the executive or judicial branches of the state government, whether elected or appointed, excluding only municipalities, counties and other governmental subdivisions of the state." This language is broad and encompassing and by its expressed terms excludes only "municipalities, counties and other governmental subdivisions of the state." As the Supreme Court specifically held in Sheldon, supra, the excluded entities and those included therein are to be determined by application of the rule of ejusdem generis. The Court held, in this case, specifically concerning the GRDA, that: ". . . by the terms of the act in question, the people have no voice in the management or government of the Authority, and no power of taxation has been conferred as in the case of counties, cities, towns, townships, and school districts. The Authority was not organized for political or governmental purposes, and does not possess political or governmental powers other than necessary to carry out the specific purposes for which it was created . . . . The waters and potential electric energy of the Grand River are the natural resources of the state, and stripped of all its detail, the act seeks to exploit, preserve, and utilize in a certain and specific manner that portion of its natural resources. The purpose of the act is analogous to that of an irrigation district, and in Wood v. Imperial Irr. Dist. (1932, Cal.) 17 P.2d 128, it is held that an `irrigation district' is not, strictly speaking, `municipal corporation', nor is it `political subdivision of state or county' or `political subsidiary.' . . . . Rather, it creates a governmental agency or public corporation, with limited powers, for the purpose of conducting a state function, which could have been accomplished by an existing state board or office, . . ." Therefore, it is clear that unless the GRDA is excluded by some other statutory provision it is included in the Central Purchasing Act. The former Attorney General Opinion provided as follows: "We agree with your assumption that any such acquisition purchases for GRDA would be made from `funds derived from sources other than State collected funds,' within the meaning of that term as used in Paragraph 4 of Section 12 of said central purchasing act, and that acquisitions from such funds are excluded from the `mandatory' provisions of said central purchasing act." The language in paragraph 4. of 74 O.S. 85.12 [74-85.12] has been amended as you have noted and no longer excludes funds as set forth in the opinion of the Attorney General of June 3, 1960. In view of the said amendment, said opinion should be withdrawn and overruled. Section 85.12, supra, now contains no exclusion which would preclude mandatory inclusion of the GRDA under the Central Purchase Act as amended. Upon full review of 82 O.S. 862 [82-862] (1971) et seq. and amendments thereto pertaining to GRDA no exceptions have been found which exclude the GRDA from inclusion in the said Act. The Supreme Court has held that exceptions to statutes are within the purview of the Legislature and if such were not enacted by the Legislature the Courts will not create exceptions. Matter of Mid America Peterbilt, 539 P.2d 499 (Okl. 1979); City of Bristow v. Groom, 194 Okl. 384, 151 P.2d 936 (1944). Therefore, the GRDA must comply with the provisions of the Central Purchasing Act, 74 O.S. 85.1 [74-85.1] (1971) et seq. as amended. However, under 82 O.S. 877 [82-877] (1971) provides the sole authority for issuance of bonds. Your third question pertains to whether the GRDA under 62 O.S 41.16 (1979) must let contracts and make purchases through the State Board of Public Affairs. Section 41.16 provides in pertinent part as follows: "Whenever departments, institutions, boards, commissions or agencies of this state enter into contracts for, or on behalf of the state for the purchase of goods, wares or merchandise, or for construction of buildings, roads, bridges or any other thing for which labor and materials must be furnished by outside vendors, such agreement shall be evidenced by written contracts or purchase orders, and must be transmitted to the Budget Director within thirty (30) days from the date of awarding of such contract or purchase order. The Budget Director shall charge such contracts, purchase orders or agreements, against the proper appropriation allotment account as an outstanding order until it is liquidated by payment of a claim, or claims, against said contracts or purchase orders, or by cancellation. The State Board of Public Affairs shall have the authority, and is hereby given the power to authorize institutions under its control, or other state agencies and functions which are required by law to make purchases through the State Board of Public Affairs, to make purchases for or on behalf of the state whenever said Board determines that the best interests of the state are served thereby." (Emphasis added) Section 62 O.S. 41.16 [62-41.16], supra, is part of the Budget Law of 1947 and upon plain reading applies to all state departments, boards, commissions, institutions and agencies now delegated to the Governor but only as to appropriated funds and Federal funds. The GRDA does not operate on appropriated funds and is further specifically authorized under 82 O.S. 862 [82-862] (1971) to receive direct grants from the United States of America. Therefore, it is clear that 62 O.S. 41.16 [62-41.16] (1979) does not apply to the GRDA. 62 O.S. 41.41 [62-41.41] (1979) is another section of the Budget Act of 1947 as amended, and therefore has no application to the GRDA for the reason aforesaid. Your fifth inquiry pertains to whether or not the GRDA must comply with the provisions of 74 O.S. 118.1 [74-118.1] (1971) et seq. In determining what is considered an agency of the State of Oklahoma it is necessary to review the definitions as established and set forth in the Act. Section 74 O.S. 118.3 [74-118.3] provides wherein pertinent as follows: "4. `Agency' means any office, commission, board or other entity created by the Constitution or statutes of this state." The sole exemptions for agencies and institutions of the State are set forth in 74 O.S. 118.12 [74-118.12] (1979). 74 O.S. 118.9 [74-118.9] (1979). The GRDA certainly is included in the language "other entity" and is not exempt by statute. Therefore, the GRDA must comply with the provisions of the Data Processing and Management Act of 1971, 74 O.S. 118.1 [74-118.1] (1971) et seq. 67 O.S. 201 [67-201] [67-201] (1971) et seq. constitute the Record Management Act. Section 67 O.S. 202 [67-202] establishes that the intent of such act is the efficient and economical management of state and local records. Section 203 sets forth the applicable definitions employed in the act as follows: "203. (a) `Record' means document, book, paper, photograph, sound recording or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business. Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included within the definition of records as used in this Act. (b) `State record' means: (1) A record of a department, office, commission, board, authority or other agency, however designated, of the State government; provided, however, the provisions of this Act shall not be applicable to, or binding upon, the State Department of Public Welfare or the Oklahoma Public Welfare Commission. (2) A record of the State Legislature. (3) A record of the Supreme Court, the Court of Criminal Appeals or any other court of record, whether of statewide or local jurisdiction. (4) Any other record designated or treated as a State record under State law. (c) `Local record' means a record of a county, city, town, village, township, district, authority or any public corporation or political entity whether organized and existing under charter or under general law unless the record is designated or treated as a State record under State law. (d) `Agency' means any department, office, commission, board, authority or other unit, however designated, of the State government; provided, however, the provisions of this Act shall not be applicable to, or binding upon, the State Department of Public Welfare or the Oklahoma Public Welfare Commission." Upon plain reading it is apparent that 201 et seq., supra, are applicable to and GRDA must comply therewith. 82 O.S. 866 [82-866] (1971) states wherein pertinent: "The District shall cause to be kept complete and accurate accounts conforming to approved methods of bookkeeping. Said accounts and all contracts, documents, and records of the District shall be kept at said principal office. Said accounts and contracts shall be open to public inspection at all reasonable times." This is the only provision pertaining to record keeping in the Act empowering and creating GRDA and it is consistent with 201 et seq., supra. 74 O.S. 110.1 [74-110.1] (1979) is the Oklahoma Act pertaining to State Property. Said statute requires the State Board of Affairs to maintain a current inventory of all equipment owned by State departments, boards, commissions, institutions or agencies excepting equipment used in medical education and research costing less than One Hundred Dollars ($100.00). The inventory shall consist of machinery, implements, tools, furniture, livestock, vehicles and other apparatus which may be used repeatedly without material impairment of its physical condition which has a calculable period of service and a value of over One Hundred Dollars ($100.00). The Act further sets forth the basis for such inventory preparation and submission. Diligent search of the statutes creating and empowering the GRDA set forth no provisions under which the GRDA is exempt. Therefore, it is apparent that the GRDA must comply with 110.1, supra. 74 O.S. 129.1 [74-129.1] (1971) et seq. constitute the State Lands Act. The said Act provides as follows: "129.1 . . . There is hereby created in the office of the State Board of Public Affairs, a Central Information Office of State Lands, which, under the direction of the State Board of Public Affairs, shall establish and maintain adequate records and information of all lands and interests in lands owned by the state or any department, board, commission, institution or agency thereof; provided, this act shall not apply to municipalities, counties, school districts or any agency thereof, or Department of Highways' rights-of-way. "129.2 . . . Immediately upon passage of this Act, every department, board, commission, institution, and agency of this State, owning or controlling land subject to the provisions of this Act, shall furnish and deliver to the Central Information Office of State Lands of the office of the State Board of Public Affairs, an itemized list of all records, deeds, abstracts and other title instruments, showing the description of and relating to any and all lands, and interests in lands, owned by it or be under its supervision and control. "129.3 . . . This act shall apply to all lands of public trusts having the State of Oklahoma, or any department, board, authority, commission, institution or agency thereof, as the primary beneficiary, but shall not apply to lands of municipalities, counties, school districts, or agencies thereof, or Department of Highways' rights-of-way. This act shall apply to all lands of water and soil conservation districts and port authorities." (Emphasis Added). Upon plain reading it is clear that this Act expressly and specifically applies to "water and soil conservation districts." Further, the Act excludes only "municipalities, counties, school districts or any agency thereof, or Department of Highways' rights-of-way." It is clear that such Act applies to the GRDA and the GRDA must comply therewith under the rule of Sheldon, supra. 74 O.S. 564 [74-564] (1979) et seq., The Archives and Records Commission Act applies to every state officer and heads of all departments, boards, commissions, agencies and institutions of the State of Oklahoma who have in their custody public records and archives deemed by them to be unnecessary for the transaction of the business of their offices. The Act itself contains no statutory exception nor exemption excluding the GRDA from this said Act. Further, the statutes creating and empowering the GRDA provide for no exemption nor exception. Therefore, the GRDA and its directors are included in and must comply with 564 et seq. 75 O.S. 251 [75-251] (1971) et seq. provides wherein relevant as follows: "251 (a) Every agency, including any authority, board, commission, department, instrumentality, office, or officer of the State of Oklahoma, that possesses rule-making powers . . ." (Emphasis Added). 82 O.S. 862 [82-862](p) (1971) provides in pertinent part as follows: "To prescribe and enforce rules and regulations for the use for recreational and commercial purposes of lakes created by the district . . . " (Emphasis Added). 82 O.S. 872 [82-872] (1971) provides in part as follows: "The District may, but without intending by this provision to limit any powers of the District as granted to it by this Act, 861-881 enter into and carry out such contract, or establish or comply with such rules and regulations concerning labor and materials and other related matters in connection with any project or projects as the District may deem desirable or as may be required by the United States of America . . ." (Emphasis Added). 82 O.S. 875 [82-875](a) (1971) provides in pertinent part: "The District shall prescribe, in the interest of public safety, suitable rules and regulations . . ." 75 O.S. 252 [75-252] (1971) requires compliance with 251 et seq., supra, otherwise any rule, regulation, amendment, revision or revocation of an existing rule or regulation made prior to the effective date of the said Act is void and of no effect unless a duly enacted emergency rule under 253. Section 252 further requires as a condition precedent to validity the filing of any rule, regulation, amendment, revision, or revocation of an existing rule or regulation made after the effective date of this said Act. As set forth hereinabove, the GRDA is an agency of the State and the Directors are State Officers. The GRDA is possessed of rulemaking authority. Therefore, as there is no exception nor exemption in the statutes for GRDA, 251 et seq., supra, apply to the GRDA and it must comply therewith as well as with the applicable filing requirements pertaining to watercraft and water safety regulations under 63 O.S. 817 [63-817] (1971). 75 O.S. 301 [75-301] (1979) et seq., the Oklahoma Administrative Procedures Act as amended provides in pertinent part as follows: "324. This Act shall not apply to municipalities, counties, school districts, and other agencies of local government; nor to specialized agencies, authorities, and entities created by the Legislature, performing essentially local functions, such as, but not limited to, Urban Renewal Authorities, Port Authorities, City and City-County Planning Commissions, Conservancy and other Districts, and public trusts having a municipality or county, or agency thereof, as beneficiary; but this Act shall apply to public trusts having the State, or any department or agency thereof, as beneficiary." Upon plain reading the GRDA is not included in those agencies of the State of Oklahoma to which the Administrative Procedures Act, 301 et seq., supra, applies. Therefore, the GRDA is not required to comply with said Act. 74 O.S. 85.26 [74-85.26] (1971) directs the State Board of Public Affairs to purchase from the lowest bidder a surety contract or contracts in the form known as a "blanket bond" to cover all elective state officers, appointive officers and employees as provided therein. Your inquiry pertains to whether or not the GRDA is included within the scope of the said statute and thus must comply therewith. 82 O.S. 865 [82-865] (1971) provides in pertinent part as follows: "The general manager, the treasurer and all other officers, agents, and employees of the district who shall be charged with the collection, custody or payment of any funds of the district shall give bond conditioned on the faithful performance of their duties and an accounting for all funds and property of the district coming into their respective hands, each of which bonds shall be in form and amount and with a surety (which shall be a surety company authorized to do business in the State of Oklahoma) approved by the Board, and the premiums on such bonds shall be paid by the district and charged as an operating expense." Section 74 O.S. 85.29 [74-85.29] provides in relevant part as follows: "The amount of surety required of each state officer or employee is set forth in the schedule listed hereinbelow: * * * "All other State Departments, Agencies, Institutions, Commissions, Authorities and other bodies of State government. $10,000.00" Section 85.30 provides as follows: "Whenever, by any presently existing law of this state or by any law hereafter enacted, any officer or employee is required to furnish bond as a prerequisite to employment, such requirement as to terms, conditions, penalty, amount or quality or type of surety shall be and is hereby deemed and defined to mean the furnishing of a bond or surety contract in the manner and amount under provisions and requirements of this act." Section 74 O.S. 85.31 [74-85.31] provides as follows: "A. Whenever any officer, statutory board, commission, committee, department, authority, or any state agent or agency by whatever name called, is authorized by any law of this state to purchase any official bond, surety bond, blanket bond or surety contract upon any state officers or employees such authority is hereby transferred and conferred upon the Central Purchasing Division of the State Board of Public Affairs and such authority so transferred and conferred shall be exercised by the Central Purchasing Division in the manner and under the provisions and requirements prescribed by this act and the Central Purchasing Act as amended. "B. The premium for the bond will be invoiced to the Central Purchasing Division and paid for by legislative appropriation set aside for that specific purpose. "C. The blanket bond shall be approved as to form and legal sufficiency by the Attorney General and shall be filed with the Secretary of State." It is apparent that the provisions set forth in 74 O.S. 85.26 [74-85.26] et seq. supra, apply to the GRDA to the extent that its current bonding requirements may not meet the minimum requirements of $10,000.00. The provisions of 85.26 et seq. do not preclude the GRDA from requiring and establishing larger bonding requirements for its officers, directors and/or employees. The premiums on all such bonds are to be paid in the manner prescribed by 865, supra. It is, therefore, the official opinion of the Attorney General that your request be answered as follows: 1. The funds derived by revenue and other means by the Grand River Dam and disbursed in accordance with 82 O.S. 865 [82-865] (1971) must be handled and reported as agency special account funds in accordance with 62 O.S. 7.2 [62-7.2] (1979) et seq. as and to the extent required thereunder. 2. The Grand River Dam Authority must comply with the provisions of the Central Purchasing Act 74 O.S. 85.1 [74-85.1] (1971) et seq., as amended. Opinion of the Attorney General dated June 3, 1960 which exempted the Grand River Dam Authority from the provisions of the Central Purchasing Act based upon the provisions of 74 O.S. 85.12 [74-85.12] (1971) prior to the said Amendments by the Legislature is hereby withdrawn and overruled in its entirety due to changes in the law as aforesaid. 3. The Grand River Dam Authority is not included within the provisions of 62 O.S. 41.16 [62-41.16] (1979), and therefore the Grand River Dam Authority is not required to comply therewith. 4. The Grand River Dam Authority is not included within the provisions of 62 O.S. 41.41 [62-41.41] (1979), and therefore the Grand River Dam Authority is not required to comply therewith. 5. The Grand River Dam Authority must comply with the provisions of the Data Processing, Planning, and Management Act of 1971, 118.1 et seq. as amended. 6. The Grand River Dam Authority must comply with the provisions of the Records Management Act, 67 O.S. 201 [67-201] (1971) et seq. 7. The Grand River Dam Authority must comply with the provisions of 74 O.S. 110.1 [74-110.1] (1979) pertaining to inventory of state property. 8. The Grand River Dam Authority must comply with the State Lands Act, 74 O.S. 129.1 [74-129.1] (1971) et seq. 9. The Grand River Dam Authority must comply with the Archives and Records Commission Act, 74 O.S. 564 [74-564] (1979)et seq., as amended. 10. The Grand River Dam Authority must comply with the State Agency Rules and Regulations Act, 75 O.S. 251 [75-251] (1971) et seq., as amended. 11. The Administrative Procedures Act, 75 O.S. 301 [75-301] (1979) et seq. does not apply to the Grand River Dam Authority on basis of the exemption or exception set forth in 82 O.S. 324 [82-324] of said Act. 12. The Grand River Dam Authority must comply with 74 O.S. 85.26 [74-85.26] (1979) et seq. to the extent that any current bonding of officers, directors, or employees under 82 O.S. 865 [82-865] (1971) may not meet the minimum requirement of $10,000.00 for each such officer, director and/or employee. The premiums on all such bonds are to be paid in the manner prescribed in 865, supra. (Richard F. Berger) SEE: Okl., 645 P.2d 1011